STATE, Respondent, v. BAKER, Appellant.

*March 9—April 3, 1962.*

For the appellant there was a brief and oral argument by *Milton T. Murray* of Milwaukee.

For the respondent the cause was argued by *Hugh R. O'Connell,* first assistant district attorney of Milwaukee county, and *William A. Platz,* assistant attorney general, with whom on the brief were *John W. Reynolds,* attorney general, and *William J. McCauley,* district attorney of Milwaukee county.

BROWN, J.    The complaint was signed by a police officer on information and belief. At the trial the only evidence of defendant's guilt was the uncorroborated testimony of James A., a fifteen-year-old boy, that defendant took James into a shed behind defendant's filling station and there they co-operated in the indecent liberties with which defendant was charged. Defendant denied James' accusations in every particular, and had a number of witnesses whose testimony tended to throw doubt on James' narrative.

Successful prosecution of the case, and likewise successful defense, depends completely on the jury's belief or disbelief in James' veracity. After the state had rested and the attorney for the defendant had called a number of witnesses whose evidence to some extent impeached James' story of his presence in the shed at the time in question, defendant's attorney called Reverend Clarence J. Schouten and then there occurred the following :

"Direct examination by Mr. Tierney:

"I am the pastor of St. Joseph's Church which is one block north of the Baker filling station. I have been the pastor there since June, 1955.

"*Q.* Do you know Jimmy A.? *A.* I do.

"*Q.* And how long have you known him? *A.* I would say from September of '55.

"*Q.* Did he go to your school? *A.* He did.

"*Q.* Do you know what Jimmy A.'s reputation in the community there is as for truth and veracity?

"Mr. Miech: I am going to object; that's highly immaterial and irrelevant and it's calling for a conclusion so far as the state's witness is concerned.

"The Court: Sustained."

Then there was some argument on the law before the court by the respective attorneys and the court told defendant's counsel that he could have till 2 o'clock p. m. to present some authority to permit the proffered evidence and court was adjourned until that hour. The record does not show the length of that interval but we do not believe that is important. Counsel did not present any authorities after the recess and the court made no further ruling, wherefore the state's sustained objection to the evidence of James' reputation for truth and veracity continued unchanged.

The defendant assigns as reversible error the court's denial of defendant's right for his witness to be heard on the question of James' reputation in the community for James' truth and veracity. Authority for admitting such evidence is easily found, though defendant's counsel apparently did not find it during the allotted time or at least did not produce it for the court.

On this appeal the state concedes that the court was in error in sustaining the objection, so no extensive research by us on the question is required for the purposes of this appeal. However, we note 58 Am. Jur., Witnesses, p. 391, sec. 725, stating:

"And, indeed, the usual method of impeaching the credibility of a witness as one who will not tell the truth and is unworthy of belief is to show the bad general reputation of the witness for truth and veracity in the community

where he lives, by impeaching witnesses who know that reputation."

In our own state we find *Duffy v. Radke* (1909), 138 Wis. 38, 40, 119 N. W. 811, wherein we said:

"The contention that the court erred in the admission of evidence to impeach the defendant cannot be sustained. The record shows that a foundation for the reception of such evidence was properly laid by showing that the witnesses based their conclusions upon their knowledge of defendant's general reputation among those with whom he resided, and the form of inquiry was properly restricted to the inquiry whether, in view of defendant's general reputation for truth and veracity, the witness would believe him under oath."

When the court permitted the state to shut out evidence bearing upon James' reputation for truthfulness under the circumstances of the trial it was an error going to the heart of defendant's guilt or innocence. The state's present contention is that this acknowledged error was cured, or at least rendered innocuous, by the failure of defendant's counsel after the recess to convince the court of its error, in which case it could be presumed that the court would reverse its erroneous ruling. We do not think the state can throw upon defendant the onus of the error made at the instance of the state. Proper objection being made, the error is not cured because defendant was unable to persuade the court that error was committed.

Defendant complains of another error alleged to call for a reversal.

When defendant was on the stand in his own defense, counsel for the state, on cross-examination, asked him:

"*Q.* One final question. Did you make yourself available to the Wisconsin crime laboratory for a lie-detector test?

"Mr. Tierney: Just a moment; that is objected to on the grounds irrelevant, immaterial, improper, and counsel knows it.

"The Court: Sustained; it's sustained."

We consider the question was improper. The results of such a test are inadmissible, as the state concedes. *State v. Bohner* (1933), 210 Wis. 651, 246 N. W. 314; *LeFevre v. State* (1943), 242 Wis. 416, 8 N. W. (2d) 288; *State v. Perlin* (1955), 268 Wis. 529, 68 N. W. (2d) 32. Had a test been made, evidence of the result would be incompetent. Therefore reference to such a test, as indicated in counsel's question, could have no proper purpose and could be asked only for prejudicial effect. But defendant's objection was prompt and the court just as promptly sustained the objection. Defendant's attorney did not move for a mistrial, nor did he request the court to instruct the jury that the question was improper and should be disregarded. Apparently defendant was satisfied by the ruling sustaining the objection. At least he asked for nothing more although there might have been more for the asking. We do not regard the question so prejudicial under the circumstances that it should by itself result in a reversal.

Defendant submits that the verdict is not sustained by the evidence.

The state of the evidence is very similar to that in *Varga v. State* (1930), 201 Wis. 579, 230 N. W. 629, in which Varga was convicted upon the uncorroborated testimony of the co-operating minor. Referring to that testimony we said, at page 580:

"His testimony upon the trial was plain, straightforward, direct, and to the point, that the defendant committed the offensive act of which he was convicted. Granted that the circumstances referred to tended to discredit his testimony, it was clearly within the function of the jury to determine whether he was telling the truth upon the trial, or whether he was evasive and prevaricating when he claimed he did not remember upon the preliminary examination. The circumstances alluded to did not read his evidence out of the case or discredit it as a matter of law. It was necessary

that his testimony be read in connection with other testimony in the case, and the balancing of this testimony was clearly a jury function. *State v. Hintz,* 200 Wis. 636, 229 N. W. 54."

So, here, upon the evidence we consider the question of guilt was a question for the jury, not for the court as a matter of law. The jury should, however, have been permitted to hear evidence on James' reputation for truth and veracity in his community. Exclusion of such testimony where the proper foundation was laid, as here, requires reversal and a new trial.

*By the Court.*—Order reversed, and cause remanded for a new trial.