BAUTISTA, Plaintiff in error, v. STATE, Defendant in error. [Case No. State 31.]

DODGE, Plaintiff in error, v. STATE, Defendant in error. [Case No. State 48.]

*Nos. State 31, 48. Argued November 5, 1971.—Decided November 30, 1971.*

(Also reported in 191 N. W. 2d 725.)

For the plaintiff in error in Case No. State 31 there was a brief by *Schwemer & Schwemer* of Milwaukee, and oral argument by *Paul E. Schwemer.*

For the plaintiff in error in Case No. State 48 there was a brief and oral argument by *Robert D. Jones* of Milwaukee.

For the defendant in error in Case No. State 31 the cause was argued by *Sverre O. Tinglum,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

For the defendant in error in Case No. State 48 the cause was argued by *Sverre O. Tinglum,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

BEILFUSS, J. As to both defendants, two issues are raised:

1. Is there sufficient credible evidence to support the convictions of robbery, party to a crime?

2. Should a new trial be ordered in the interest of justice?

As to Bautista alone there is a third issue: Is the sentence of six years excessive?

The record is clear that neither Bautista nor Dodge actually took the purse from Gandy; therefore their conviction for robbery must rest upon sec. 939.05 (2) (b) and (c), Stats., as a party to the crime.

Two statutes are involved:

"943.32 **Robbery.** (1) Whoever, with intent to steal, takes property from the person or presence of the owner by either of the following means may be imprisoned not more than 10 years:

"(a) By using force against the person of the owner with intent thereby to overcome his physical resistance or physical power of resistance to the taking or carrying away of the property, . . ."

"939.05 **Parties to crime.** (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

"(a) Directly commits the crime; or

"(b) Intentionally aids and abets the commission of it; or

"(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw."

22 C. J. S., *Criminal Law,* pp. 237, 238, sec. 79, states that:

.

"It is a general rule under the common law that one is not liable for the criminal acts of another in which he did not participate directly or indirectly. A person is a party to an offense, however, if he either actually commits the offense or does some act which forms a part thereof, or if he assists in the actual commission of the offense or of any act which forms part thereof, or directly or indirectly counsels or procures any person to commit the offense or to do any act forming a part thereof. To constitute one a party to an offense it has been held to be essential that he be concerned in its commission in some affirmative manner, as by actual commission of the crime or by aiding and abetting in its commission and it has been regarded as a general proposition that no one can be properly convicted of a crime to the commission of which he has never expressly or impliedly given his assent. . . ."

Several rules applied in appellate review of the sufficiency of the evidence in criminal cases have been stated so frequently in our late cases that they need no citation of authority to support them. The burden of proof is upon the state to prove every essential element of the crime charged beyond reasonable doubt. The test is not whether this court or any of the members thereof are convinced beyond reasonable doubt, but whether this court can conclude the trier of facts could, acting reasonably, be so convinced by evidence it had a right to believe and accept as true. A criminal conviction can stand based in whole or in part upon circumstantial evidence. The credibility of the witnesses and the weight of the evidence is for the trier of fact. In reviewing the evidence to challenge a finding of fact, we view the evidence in the light most favorable to the finding. Reasonable inferences drawn from the evidence can support a finding of fact and, if more than one reasonable inference can be drawn from the evidence, the inference which supports the finding is the one that must be adopted. Our review of the record in response to a challenge to the sufficiency of the evidence is so limited by these rules.

There is no reasonable doubt that both Bautista and Dodge actually participated in a vicious assault upon Gandy. Such an assault can be part of and an aggravation of the crime of robbery. A physical assault, such as described in the evidence herein, is not only a heinous crime itself but can be a part of a planned robbery in that it renders the victim either incapable or too fearful to resist.

In *State v. Nutley* (1964), 24 Wis. 2d 527, 129 N. W. 2d 155, the court identified and analyzed two bases on which a person can be a party to a crime.

One basis is the complicity theory, or aiding and abetting. In *Nutley, supra,* at pages 554, 555, this court stated:

"Under the terms of sec. 939.05 (2) (b) and (c), Stats., a person may be vicariously liable for a substantive crime directly executed by another. Under the complicity theory of sec. 939.05 (2) (b), a person is liable for the substantive crime committed by another if (1) he undertakes conduct (either verbal or overt action) which as a matter of objective fact aids another person in the execution of a crime, and further if (2) he consciously desires, or 'intends' that his conduct will yield such assistance. He must consciously direct his conduct toward the realization of the criminal objective. He must have a 'stake in the outcome.'

"However, it is not necessary that the aider and abettor enter into an agreement with the perpetrator to assist him in consummation of the crime. Nor is it necessary that the perpetrator be aware of the accomplice's efforts, in order to hold the accomplice liable for the substantive crime. . . ."

In *Nutley,* at pages 555, 556, the court also described the conspiracy theory as follows:

"Under the conspiracy theory of sec. 939.05 (2) (c), Stats., a person may be vicariously liable for the substantive crime of another under either of two circumstances.

"(1) The parties may enter into an agreement to commit a particular crime. The fact of agreement imposes liability for the substantive offense on all conspirators when the crime is consummated by a single perpetrator.

"(2) During the course of executing the crime on which there is agreement, one person commits another crime which is, objectively, the natural and probable consequence of the agreed-upon crime. Under these circumstances, the fact of agreement renders all parties liable for the incidental crime.

"The rationale for the conspiracy theory recognizes that the fact of agreement materially reinforces the desire of the parties to carry out their portion of the division of criminal labor. Since each conspirator psychologically reinforces the conduct of the overt perpetrator, each is justly held responsible for his substantive crime.

"The elements of conspiracy are:

"(1) An agreement among two or more persons to direct their conduct toward the realization of a criminal objective.

"(2) Each member of the conspiracy must individually consciously intend the realization of the particular criminal objective. Each must have an individual 'stake in the venture.' "

In *Hawpetoss v. State* (1971), 52 Wis. 2d 71, 81, 187 N. W. 2d 823, it is stated:

"The circumstantial evidence relied upon need not show any express agreement between the parties, a mere tacit understanding of a common purpose is sufficient. *O'Neil v. State* (1941), 237 Wis. 391, 404, 296 N. W. 96. . . ."

If the conviction of Bautista and Dodge as parties to the crime of robbery is to stand, it must rest upon reasonable inference drawn from credible evidence.

Taking the credible evidence most favorable to the state, as this court must upon review, the following facts and circumstances appear:

Three men entered a tavern late in the afternoon and joined another man and three girls. One of the four men, the defendant Bautista, involved himself in an argument with a customer, the eventual victim, Gandy, by turning off the light over a pool table Gandy was using. The light was turned off at least twice. Another of the four men, John, intervened in the argument and threatened Gandy. The four men demanded service from the bartender and demanded they be given credit. The bartender refused and threats were made to "tear the place up." The bartender attempted to call the police. Gandy finished his game of pool and left the barroom to go to his car in the parking lot adjoining the tavern. All four men and three girls left and followed Gandy. Three of the men were armed with beer bottles. Gandy was viciously assaulted by all four men. He was hit in the head and face with fists and beer bottles and also kicked in the face, and was rendered unconscious. A woman patron of the tavern, who had observed the individuals and the incidents inside, came out into the parking lot. She observed all four men over Gandy; saw Bautista and Dodge run to a car, and Malone take Gandy's wallet and run to the car. All four men and the three girls got into the car and left immediately. Both Bautista and Dodge testified that they saw Malone take the wallet which was thrown into the car. Both Bautista and Dodge entered the car after they knew Malone took Gandy's wallet. There is no evidence of what became of the wallet or the $20 contained therein.

From this evidence the trier of facts could reasonably infer that both Bautista and Dodge aided and abetted in the robbery by assaulting Gandy to subdue him and prevent him from resisting, and that they had a stake in the proceeds of the robbery.

Likewise, there is sufficient evidence to permit an inference of at least a tacit agreement and a conspiracy to rob Gandy—the argument, the demand for credit, the immediate following of Gandy outside by all four men

and the three girls, the being armed with beer bottles, the beating, and Bautista and Dodge fleeing in the car with the others after they saw Malone rob Gandy.

We conclude there is sufficient credible evidence to support the finding of guilty of robbery by being a party to the crime.

We have concluded that the evidence is sufficient to sustain the conviction. There is no other assignment of error. We do not find that justice has miscarried and do not conclude that these cases should be reversed and retried with only the hope that a different result would be reached. We cannot, under these circumstances, order a new trial in the interest of justice.

The defendant Bautista contends that if the evidence is sufficient to uphold his conviction, the six-year sentence imposed is excessive. The statutory maximum is ten years for the robbery, party to a crime charge. This court will modify a sentence on review only if there has been a clear abuse of discretion. *State v. Schilz* (1971), 50 Wis. 2d 395, 184 N. W. 2d 134. The trial court did not order a presentence investigation nor did it state reasons for passing the six-year sentence on Bautista other than remarking, "Criminal assault will not be tolerated in this community." A review of the circumstances, including Bautista's part in the assault on Gandy, demonstrates that the six-year sentence is not so excessive as to constitute judicial indiscretion on the part of the trial court.

*By the Court.*—Order and judgments affirmed.