GADDIS, Plaintiff in error, v. STATE, Defendant in error.*

*No. State 18. Argued February 6, 1974.—Decided April 12, 1974.*
(Also reported in 216 N. W. 2d 527.)

* Motion for rehearing denied, without costs, on June 4, 1974.

For the plaintiff in error there was a brief by *Donald J. Hanaway* and *Condon & Hanaway,* all of Green Bay, and *Howard B. Eisenberg,* state public defender, and oral argument by *Donald J. Hanaway* and *Mr. Eisenberg.*

For the defendant in error the cause was argued by *Christine M. Wiseman,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

ROBERT W. HANSEN, J.   Challenges are raised to each step of the proceedings—from the preliminary hearing to the place of trial, through the conduct of the trial to the jury verdict and sentence imposed by the court.

*The hearing.* The challenge to the bindover claims that the evidence produced at the preliminary hearing was insufficient to establish probable cause as to: (1) That the defendant struck the victim; (2) that the victim was an officer or employee of the prison; and (3) that the victim sustained bodily injury at the hands of the defendant. All three particulars are elements of the crime charged.[1] The purpose of a preliminary hearing, as codified by statute,[2] is to determine if there is probable cause that a felony has been committed.[3] Guilt need

---

[1] "Sec. 946.43 **Assaults by prisoners.** Any prisoner confined to a state prison or to any other institution by virtue of a transfer from a state prison who intentionally does any of the following may be imprisoned not more than 10 years:

". . .

"(2) Causes bodily harm to an officer, employe, visitor or another inmate of such prison or institution without his consent; . . ."

[2] Sec. 970.03 (1), Stats.

[3] *State ex rel. Hanna v. Blessinger* (1971), 52 Wis. 2d 448, 450, 190 N. W. 2d 199.

not be established at such hearing beyond reasonable doubt.[4] As to the defendant striking the victim, a witness at the preliminary hearing testified that he saw the defendant ". . . swinging the chair on to the shoulders and back of Captain McLimans . . . about three or four times." As to the victim being an officer or employee, the fellow officer testifying at the preliminary, repeatedly referred to the victim as "Captain McLimans" and, when asked for the names of officers within the dining room area, the same witness named "Captain McLimans." The reasonableness of the inference that "Captain McLimans" was an officer is heightened by the statutory reference to "officer, employe, visitor or another inmate." It is difficult to conceive of a victim of an in-prison assault not coming within one of the statutorily mentioned categories. As to the victim being injured by defendant's acts, from the testimony that defendant was observed striking the victim with a chair and that the victim was bleeding profusely and that his face and back were covered with blood, it was not unreasonable for the magistrate to conclude that defendant's conduct did cause bodily harm. A preliminary hearing is to be ". . . concerned with the practical and nontechnical probabilities of everyday life in determining the existence of probable cause. . . ."[5] The evidence here was sufficient for bindover as to all elements of the offense involved.

*Place of trial.* The issue raised relates to defendant's motion for change of venue. There was a discussion of issues raised by such motion at the time of arraignment, and at a subsequent court hearing on motions. At such hearing the court stated that the number of witnesses to be called would bear upon any decision to change the place of trial. There is no need here to review the weight

---

[4] *Court v. State* (1971), 51 Wis. 2d 683, 688, 188 N. W. 2d 475.

[5] *Taylor v. State* (1972), 55 Wis. 2d 168, 173, 197 N. W. 2d 805.

properly to be given to convenience of witnesses in changing venue since, on the day of trial, just subsequent to the selection of the jury, the court stated on and for the record that the defendant had withdrawn his motion for change of venue and defense counsel confirmed that he had. Both the motion and whether it should have been granted vanish with such withdrawal, confirmed by defense counsel's statement on the record:

"*Mr. Hanaway* [defense counsel]: Yes, your Honor, I indicated to the Court several days ago that I wished to withdraw and do at this time withdraw my previous motion regarding a change of venue. I indicate in the record and on behalf of the defendant we are perfectly satisfied with the jury that is sworn in. Obviously the jury has been sworn and I have waived any objection to it."

*The trial.* The claim of error in the conducting of the trial is to the trial court's refusing to admit into evidence the graphs and expert opinion testimony concerning the results of a polygraph test taken by the defendant prior to trial. The test was given by the state crime laboratory. (For the purpose of review upon appeal only, the trial court made part of the record the conclusion of the experienced examiner who conducted the test which was that the defendant was truthful in his responses to questions asked.) It appears that the defendant requested, and the trial court approved the request, that the state crime laboratory conduct a polygraph examination of the defendant.[6] Defendant, subsequent to the giv-

---

[6] *See:* Sec. 165.79, Stats., providing in part: ". . . Upon request of a defendant in a felony action, approved by the presiding judge, the laboratory shall conduct analyses of evidence upon behalf of such defendant. No prosecuting officer is entitled to an inspection of information and evidence submitted to the laboratory by the defendant, or of the laboratory's findings, or to examine laboratory personnel as witnesses concerning the same, prior to trial, except to the extent that the same is used by the accused at a preliminary hearing. Employes of the laboratory

ing of the test, offered to submit to another polygraph examination to be conducted by an examiner selected by the prosecution, agreeing to stipulate in advance the results of such test would be admissible in evidence. The defendant's offer of proof included his statement that he would testify during the trial as, in fact, he did. When defense counsel sought to introduce the test and expert opinion related thereto into evidence at time of trial, the court held it inadmissible, holding: ". . . the law is still in this state that the results of those tests are inadmissible." At the time they were.[7] Since then, and at this term of court, the ban against polygraphic evidence in criminal cases in this state has been relaxed,[8] the court adopting in *Stanislawski* what it termed the *Valdez* rule [9] with the procedure to be followed,[10] including the first of four prescribed qualifying conditions for admission of polygraphic evidence to be: "That the district attorney, defendant and his counsel all sign a written

who made examinations or analyses of evidence shall attend the criminal trial as witnesses, without subpoena, upon reasonable written notice from either party requesting such attendance. . . ."

[7] *State v. Bohner* (1933), 210 Wis. 651, 657, 658, 246 N. W. 314, followed in: *Meyer v. State* (1964), 25 Wis. 2d 418, 425, 130 N. W. 2d 848; *State v. Baker* (1962), 16 Wis. 2d 364, 368, 114 N. W. 2d 426; *State v. Perlin* (1955), 268 Wis. 529, 537, 68 N. W. 2d 32; *LeFevre v. State* (1943), 242 Wis. 416, 425, 8 N. W. 2d 288.

[8] *State v. Stanislawski* (1974), 62 Wis. 2d 730, 216 N. W. 2d 8.

[9] *State v. Valdez* (1962), 91 Ariz. 274, 371 Pac. 2d 894 (en banc).

[10] Both *State v. Stanislawski, supra,* at pages 742, 743, and *State v. Valdez, supra,* requiring: (1) Written stipulation of district attorney, defendant and his counsel for defendant's submission to the test and its admissibility; (2) admission to be subject to discretion of trial court; (3) opposing party to have right to cross-examine; and (4) jury to be instructed that examiner's testimony tends only to indicate telling or not telling the truth and that it is for the jury to determine what weight and effect such testimony shall be given.

stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs, and the examiner's opinion thereon on behalf of either defendant or the state." [11] There was no such stipulation in the case before us, so it follows that the *Stanislawski* decision did not authorize the admission of the polygraph test under the procedure followed in the case before us.

The procedure here followed—defendant's request, the court's approval and the state crime laboratory examiner's conducting the test, under sec. 165.79, Stats.— could be viewed as an additional alternative procedure to that authorized in the *Stanislawski Case*, particularly where the defendant offered to submit to another polygraph examination administered by any examiner the prosecutor cared to designate. However, all justices agree that, having determined in *Stanislawski* the proper procedure for the admission of polygraph evidence in this state, we ought not consider additional or alternative procedures so soon after relaxing the forty-year-old total ban on such evidence. Some experience with the by-stipulation-only procedure should be had before additions to it should be considered. Also, it is to be noted that no state supreme court,[12] and only one federal district court,[13] has yet gone beyond the admitting of polygraph

[11] *State v. Stanislawski, supra,* at page 742.

[12] *See: State v. Arnwine* (1961), 67 N. J. Super. 483, 495, 171 Atl. 2d 124, 131, the court stating: ". . . there is not a single reported decision where an appellate court has permitted the introduction of the results of a polygraph or lie-detector test as evidence in the absence of a sanctioning agreement or stipulation between the parties. . . ."

[13] *See: United States v. Ridling* (E. D. C. Mich. 1972), 350 Fed. Supp. 90, 91, the headnote summarizing as follows: "Where defendant in perjury prosecution proposed to offer testimony of polygraph experts, it was appropriate to receive such testimony provided defendant would submit to additional tests by expert appointed by court from group of three independent experts who

evidence only where its admissibility is stipulated to by the parties involved.[14] The trial court ruling holding the polygraph evidence in this case inadmissible is upheld.

*The jury verdict.* The attack upon the jury verdict is as to the sufficiency of the evidence to sustain it. When this question of the sufficiency of the evidence is presented on appeal in a criminal case the only question for this court is whether the evidence adduced, believed and rationally considered by the jury was sufficient to prove the defendant's guilt beyond a reasonable doubt.[15] This ultimate test is the same whether the trier of the facts is a court or jury.[16] As to the challenge to the sufficiency of defendant's identification by the state's witnesses because each observed the defendant for a matter of seconds, it is enough to note that all such witnesses stated that they were familiar with defendant's appearance and that they recognized him when they saw him. Time of observing goes to weight of their testimony for the jury to determine. As to the claim of lack of proof that defendant caused the injuries sustained by the victim, it is enough to note that the statute requires only that he in-

would be recommended by parties, and provided such expert, after examination, had opinion on defendant's truthfulness; in such event testimony of defendant's experts and court's expert would be admitted; however, if defendant would not agree to conditions, or if court's expert could not determine truthfulness of defendant, no polygraph evidence would be admitted."

[14] *See: State v. McDavitt* (1972), 62 N. J. 36, 297 Atl. 2d 849; *State v. Fields* (Mo. 1968), 434 S. W. 2d 507; *State v. Freeland* (1964), 255 Iowa 1334, 125 N. W. 2d 825; *State v. Ross* (1972), 7 Wash. App. 62, 497 Pac. 2d 1343; *People v. Davis* (1969), 270 Cal. App. 2d 841, 76 Cal. Rptr. 242; *State v. Brown* (Fla. App. 1965), 177 So. 2d 532; and *State v. Valdez, supra.*

[15] *Lock v. State* (1966), 31 Wis. 2d 110, 114, 142 N. W. 2d 183, citing *State v. Johnson* (1960), 11 Wis. 2d 130, 137, 104 N. W. 2d 379.

[16] *Id.* at page 114, citing *State v. Waters* (1965), 28 Wis. 2d 148, 135 N. W. 2d 768; *Gauthier v. State* (1965), 28 Wis. 2d 412, 137 N. W. 2d 101.

flict "bodily harm," [17] not that he be the only one inflicting harm or that he caused all of the injuries sustained. The testimony of a prosecution witness that he saw the defendant strike the victim three or four times with a chair supports a jury inference that defendant's assault resulted in some of the injuries sustained. To the claim that a reasonable jury could not have found the defendant guilty because of the number of witnesses who testified that he was in the prison gymnasium at a basketball practice during the assault and the others in the dining room who did not place the defendant in the group beating the officer, the response has to be that a question of credibility of witnesses was presented to the jury. If they believed the defense witnesses' testimony, the defendant was not at the scene of the crime and did not participate in the assault. If they believed testimony introduced by the prosecution, the defendant was observed at the scene of assault and observed striking the victim several times with a chair. The testimony of defense witnesses is certainly not incredible, but neither is the testimony of the witnesses for the prosecution. The credibility of these witnesses and the weight to accord their conflicting testimony were properly the function of the jury to determine. The evidence supporting the jury verdict is not so insufficient in probative value that it can be said as a matter of law that no trier of fact acting reasonably could be convinced to the degree of certitude required in criminal cases, and that is the test on appellate review. [18]

*The sentence.* The claim is that the trial court's imposition of a ten-year sentence, the maximum under the statute, [19] to be served consecutively to the term being served by defendant, was excessive. On this issue it is

---

[17] *See:* Sec. 946.43 (2), Stats.

[18] *Irby v. State* (1973), 60 Wis. 2d 311, 313, 210 N. W. 2d 755.

[19] Sec. 946.43 (2), Stats.

to be noted that the record reveals no motion to reduce sentence which must be filed in the trial court within ninety days of sentencing.[20] Failure to make such motion bars a defendant from raising an issue as to sentencing within statutory limits except under compelling circumstances.[21] We doubt that such compelling circumstances have been established in this case,[22] but resolve the doubt in favor of considering the challenge to the sentence on the merits. At the sentencing hearing in this case, the trial court was informed of defendant's prior convictions: burglary (ten-year sentence); burglary, party to a crime (ten-year sentence); escape from prison (one-year sentence); all sentences consecutive. The trial court acknowledged that the acts of the defendant did not account for all of the serious injuries sustained by the victim of the assault, but held that a lesser sentence would deprecate the seriousness of this type of in-prison offense. This court will modify a sentence only where there has been a clear abuse of discretion,[23] and an abuse of discretion will be found only where there is no rational basis for the sentence imposed, or where the rationale for the sentence imposed is not either articu-

[20] See: *Hayes v. State* (1970), 46 Wis. 2d 93, 106, 175 N. W. 2d 625.

[21] See: *Farley v. State* (1971), 50 Wis. 2d 113, 115, 183 N. W. 2d 33; *Tatum v. State* (1971), 51 Wis. 2d 554, 556, 187 N. W. 2d 137.

[22] See: *Whitmore v. State* (1973), 56 Wis. 2d 706, 203 N. W. 2d 56; *Stockwell v. State* (1973), 59 Wis. 2d 21, 207 N. W. 2d 883.

[23] *Bautista v. State* (1971), 53 Wis. 2d 218, 227, 191 N. W. 2d 725, citing *State v. Schilz* (1971), 50 Wis. 2d 395, 184 N. W. 2d 134, which states at page 405: "The trial judge in this case exercised his sentencing discretion on the basis of the facts of record and with full consideration that the nature of the particular crime required a substantial sentence. The sentence imposed was not as a result of the abuse of discretion."

lated in or inferable from the record.[24] We find no abuse of discretion in the sentence here imposed.

To the suggestion that, even if the individual challenges do not warrant reversal, the "entire case and totality of circumstances" do warrant reversal in the interest of justice, we hold that with the bindover proper, the change of venue motion withdrawn, the polygraph evidence properly excluded, the sentence upheld and the principal issue held to be one of credibility for the jury as trier of fact to resolve, there is no basis for considering, much less directing, a reversal in the interest of justice under sec. 251.09, Stats.

*By the Court.*—Judgment affirmed.

---

[24] *McCleary v. State* (1971), 49 Wis. 2d 263, 282, 182 N. W. 2d 512, this court also stating: ". . . It is not only our duty not to interfere with the discretion of the trial judge, but it is, in addition, our duty to affirm the sentence on appeal if from the facts of record it is sustainable as a proper discretionary act."