DAY, Plaintiff in error, v. STATE, Defendant in error.

Supreme Court

*No. 77–187–CR.  Submitted on briefs October 10, 1979.—
Decided November 6, 1979.*
(Also reported in 284 N.W.2d 666.)

For the plaintiff in error the cause was submitted on the briefs of *Howard B. Eisenberg*, state public defender, and *Ronald L. Brandt*, deputy state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette*, attorney general, and *Marguerite M. Moeller*, assistant attorney general.

COFFEY, J. This is a review of a judgment of conviction for having sexual intercourse with a child and a subsequent order of the court denying the plaintiff in error's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

Delton David Day (hereinafter the defendant) was charged with two counts of sexual intercourse with a child, in violation of sec. 944.10 (2), Stats., and with habitual criminality, contrary to sec. 939.62 (1) (c). The habitual criminality count was dismissed on October 24, 1975 and on December 30, 1976 defendant's motions to suppress certain evidence and to dismiss the information for an improper arrest were denied. Defendant does not challenge that ruling.

The first prosecution witness at the jury trial and the girl named in the first count of the information was Carmen, a 15 year old seventh grader at Kosciuszko Jr. High School.

The first complainant, (hereinafter referred to as Carmen), after identifying the defendant, testified that

she visited the defendant's house about every other day along with several other young people. While at the defendant's house, the teenagers would talk, drink beer and smoke marijuana that he usually supplied.

The complainant then testified that she had sexual intercourse with the defendant approximately six times during the summer of 1975. The only specific date she could remember was July 4, 1976 which she later corrected to July 4, 1975. On direct examination she stated no one else was in the house when the July 4th incident took place. On cross-examination, when read her prior testimony taken at the preliminary hearing, she admitted that there were three other people in the house when the July 4th act of intercourse occurred. However, she admitted telling an attorney for the defendant prior to trial that she never had sexual relations with the defendant.

With reference to the second count of sexual intercourse with a child charged against the defendant, she testified that on one occasion during the summer of 1975 she observed the defendant and the other complainant having sexual relations on the couch in the defendant's living room. The witness also stated that the second complainant had told her that she never had sexual relations with the defendant. Lastly, she said that often the other complainant had been asked to leave defendant's home because she had removed her clothes.

The second prosecution witness (hereinafter referred to as Marilyn) was the girl named in the second count of the information. She was 17 years old at the time of trial and a Junior at South Division High School. She testified that she knew both Carmen and the defendant. She also stated she had known the defendant for about three years, had visited his house frequently, although the last time was in August, 1975 and had seen many other young people at the defendant's house.

The second complainant, Marilyn, stated that on July 19, 1975 she and her friends gave a baby shower for Carla Kuester, who, at that time, was living with the defendant. She testified that during the party she had sexual intercourse with the defendant on the living room couch while the other people in the house were in the kitchen approximately four feet away, even though there was no door between the kitchen and living room. She said the baby shower began about noon and the act of sexual intercourse with the defendant occurred during the party, between 3:00 and 4:00 p.m. She also recounted that she had intercourse with the defendant on three other occasions. The July 19th act of sexual relations was the last of the four occasions and the only one of the four times where she could recall the specific date. She stated the defendant threatened her harm if she did not have sexual intercourse with him although she could not recall the particular language used in the threats.

On cross-examination, Marilyn denied that the shower was on May 3, 1975, even though confronted with a shower invitation for that date. She also admitted telling the defendant's prior attorney that she never had sexual relations with the defendant. She stated in her testimony that she told the district attorney that the defendant had threatened her with a knife. However, later counsel for the defense and state stipulated that no such statement was ever made. Lastly, she admitted there were instances when the defendant asked her to leave his house because she removed her clothes.

Testimony from the next three witnesses was objected to by the defendant as being barred by sec. 904.04(2), Stats. The court in each instance overruled the defendant's objections and allowed the testimony to be received. The court found the evidence admissible as pertaining to a motive, intent, plan or design.

The first of the three witnesses was 14 years old and she testified that she knew the defendant and frequently went to his home to drink and smoke marijuana. She also said she had sexual intercourse with the defendant on several occasions but could not recall the specific dates of the sexual acts. She indicated the acts occurred during the period of July, 1975 to Christmas, 1975. She also admitted telling the defendant's previous attorney that she never had sexual intercourse with the defendant but at trial she stated that her earlier statements had been lies.

Further, she testified she had seen Marilyn, the complainant in the second count, and the defendant together in the bedroom and at a later time heard Marilyn say that she "would get back at" the defendant.

The second witness, age 13, testified that she often visited defendant's home and knew the defendant and the second complainant, Marilyn. She said she saw the defendant and Marilyn having sexual intercourse on one occasion while she was approximately three feet away.

The state rested its case after offering the testimony of the third witness, a 16-year old female, who stated that on one occasion while she was a runaway she stayed overnight at the defendant's house. She said the defendant allowed her to stay on the condition that she sleep with him, but she refused. She testified there were several runaways staying with the defendant at that time.

The defense called Carla Kuester to testify. She was the person for whom the July 19, 1975 baby shower was given. The defendant was the father of the child subsequently born to her on July 22, 1975. She testified that the shower was not held on July 19, 1975 as Marilyn testified but rather on May 3, 1975 as indicated on the shower invitation. She said the shower began around 11:00 a.m. and lasted until 6:00 or 7:00 p.m. Furthermore, she testified that her mother never left the living

room during that time, and thus it would have been impossible for the defendant and Marilyn to have had sexual intercourse in the living room on the date of the shower.

Ms. Kuester said she had often asked Marilyn to leave the defendant's home, including one occasion when the complainant had removed her blouse. In addition, she testified that on one occasion Marilyn offered to have sexual relations with a neighbor of the defendant and that the neighbor called the police. She also testified that Marilyn at one point said that she had had sexual intercourse with the defendant, but later denied making the statement when the defendant confronted her with it. The defense rested with the defendant declining to testify in his own behalf.

The jury returned verdicts of not guilty as to the first count of sexual intercourse with Carmen, the 15 year old complainant, and guilty as to the second count involving Marilyn, the 17 year old complainant. The court accepted the jury's verdict and entered judgment accordingly. The defendant was sentenced to an indeterminate term of imprisonment not to exceed ten years to run consecutive to any present sentence being served.

On July 25, 1977, the defendant's post-conviction motions for judgment notwithstanding the verdict or in the alternative for a new trial were denied by the court.

The defendant brought two writs of error seeking review of the judgment of conviction and orders denying post-conviction motions.

*Issues*

1. Whether the testimony of the second complaining witness was so inherently incredible so as to render the evidence insufficient to support the conviction?

2. Whether the testimony of the three young girls, who were not complaining witnesses, should have been

excluded under sec. 904.04(2), Stats., as inadmissible "other crimes" evidence?

3. Whether the testimony of the three young girls, if admissible under sec. 904.04(2), Stats., should have been excluded under sec. 904.03 as being prejudicial, cumulative and confusing to the jury?

4. Whether the defendant is entitled to a new trial in the interests of justice under sec. 251.09, Stats. (renumbered sec. 751.06)?

*Credibility of the Evidence*

The defendant was charged with two counts of sexual intercourse with a child, contrary to sec. 944.10(2), Stats.[1] The defendant concedes that two elements of the crime, that of the male being over 18 years of age and the female being under 16 years of age, were clearly established at trial. However, the defendant contends on his appeal that the evidence at trial was insufficient as a matter of law to establish the act of sexual intercourse.

The defendant in his brief argues that the inconsistencies in the testimony of Marilyn, the second complaining witness, and the unusual circumstances surrounding the July 19, 1975 act of intercourse, and the fact that there were several people only three to four feet away, render the entire testimony incredible, unworthy of belief and therefore insufficient to support the jury's verdict of guilty.

The standard of appellate review in those cases where a challenge is made to the sufficiency of the evidence

---

[1] Sec. 944.10(2), Stats. 1973 reads: "Any male who has sexual intercourse with a female he knows is not his wife may be penalized as follows:

"...

"(2) If the female is under the age of 16 and the male is 18 years of age or over, imprisoned not more than 15 years ..."

A similar proscription is now incorporated in the revised sexual assault statute, sec. 940.225, created by Laws of 1975, ch. 184.

is well-settled. It is the province of the trier of fact, in this instance the jury, to consider the credibility of witnesses and determine the weight given to their testimony. *Gauthier v. State,* 28 Wis.2d 412, 417, 137 N.W.2d 101, 104 (1965); *Wheeler v. State,* 87 Wis.2d 626, 634, 275 N.W.2d 651 (1979).

Upon a challenge to the sufficiency of the evidence in a criminal case the issue becomes ". . . whether the evidence adduced, believed and rationally considered by the jury was sufficient to prove the defendant's guilt beyond a reasonable doubt. . . ." *Gaddis v. State,* 63 Wis.2d 120, 127, 216 N.W.2d 527, 531 (1974); *See also: Bautista v. State,* 53 Wis.2d 218, 223, 191 N.W.2d 725 (1971). Reasonable doubt need ". . . not exclude every possible doubt but is rather that degree of moral certitude based on convincing reason and excluding all doubt as to the existence of a different conclusion based on reasons." *State v. Clark,* 87 Wis.2d 804, 814, 275 N.W.2d 715, 720 (1979).

The court in *Gauthier* phrased the general rule on when an appellate court will upset a jury's determination of a witness' credibility, as follows:

". . . It is only when the evidence that the trier of fact has relied upon is inherently or patently incredible that the appellate court will substitute its judgment for that of the factfinder, who has the great advantage of being present at the trial." *Gauthier v. State, supra* at 416; *see also; Simos v. State,* 53 Wis.2d 493, 495, 192 N.W.2d 877, 878 (1972).

Inherently or patently incredible evidence is that type of evidence which is ". . . in conflict with nature or fully established or conceded facts. . . ." *State v. Clark, supra* at 816; *Chapman v. State,* 69 Wis.2d 581, 583, 230 N.W.2d 824, 825 (1975); *Simos v. State, supra* at 495–96.

In support of his contention that the second complainant's testimony was inherently incredible as a matter of law, the defendant points to the following evidence contained in the trial court record:

1. her statement to an early defense attorney denying any sexual intercourse with the defendant;

2. her statements to the district attorney concerning the knife threat which the district attorney later stipulated did not occur;

3. the frequent instances wherein she was asked to leave defendant's house because of her conduct, including incidents where she removed her clothes.

However, evidence of incidents such as these bear more on the credibility of the witness which is a question a jury resolves and is not generally disturbed on appellate review. *Gauthier v. State, supra.*

The defendant also argues that the testimony where there were several persons in the kitchen only four feet away when the act of intercourse allegedly took place and with no door obstructing their view, renders this account patently unbelievable. While such conduct is not generally approved of and is unusual, it cannot be described as "in conflict with the uniform course of nature or with fully established or conceded facts." *Chapman v. State, supra* at 583.

Even if the court were to be persuaded by the defendant's argument that the second complainant's testimony was not totally reliable, the conviction is sustainable under the rationale expressed in *Syvock v. State,* 61 Wis. 2d 411, 213 N.W.2d 11 (1973) wherein the court stated;

" '. . .[w]here the testimony of the prosecuting witness bears upon its face evidence of its unreliability, to sustain a conviction there should be corroboration by other evidence as to the principal facts relied on to constitute the crime.' " *Id.* at 414.

In this case the testimony of Carmen that she witnessed the defendant and Marilyn in an act of sexual intercourse provides ample corroborating evidence. The defendant argues that Carmen's testimony must be discounted for the following reasons: (1) since the defendant was acquitted of the criminal charges involving Carmen, the jury obviously found her testimony to be incredible; and (2) the discrepancies between the two girls' testimony about the alleged act of intercourse renders Carmen's statements unbelievable. However, both those questions deal with the credibility of the witness in the eyes of the trier of fact—the jury. The determination of credibility is not within the scope of appellate review. *Gauthier v. State, supra.* This court cannot say, as a matter of law, that Carmen's testimony concerning the sexual activity of Marilyn with the defendant was so "inherently or patently incredible" so as to defeat its corroborative effect.

We also conclude that Marilyn's testimony was not inherently incredible and could properly have been considered by the jury. Therefore, there was sufficient evidence produced at trial to support the defendant's conviction on the charge of having sexual intercourse with Marilyn, a minor.

*"Other Crimes" Evidence*

Sec. 904.04(2), Stats.,[2] provides:

"Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

[2] Sec. 904.04(2) is a clear statutory adoption of the Supreme Court's holding in *Whitty v. State,* 34 Wis.2d 278, 149 N.W.2d 557 (1967).

The defendant contends that the testimony of the three noncomplaint witnesses falls within the prohibition of sec. 904.04(2) and its admission constitutes reversible error. The state counters that their testimony is relevant as to the defendant's motive or plan which was to intice young girls to his home, supply them with beer and marijuana in anticipation of eventual "repayment" in the guise of sexual favors.

*Whitty v. State, supra,* is a landmark case dealing with the issue of admittance of other crimes evidence. The court in that case recognized as a well-established rule that ". . . evidence of prior crimes is admissible when such evidence is particularly probative in showing elements of the specific crime charged, intent, identity, system of criminal activity, to impeach credibility, and to show character in cases where character is put in issue by the defendant." *Id.* at 292. The court in *Whitty v. State, supra,* also held that it was not necessary that the defendant have in fact been convicted of the other or prior crimes in order for them to be admissible as prior crimes; evidence of an incident, crime or occurrence would be sufficient.

The inherent danger in admitting other crime evidence under sec. 904.04(2) was recognized in *State v. Tarrell,* 74 Wis.2d 647, 247 N.W.2d 696 (1976):

". . . The problem with admitting other crime evidence to show motive, plan, or intent is the possibility, or even probability, that a jury may conclude that since the defendant did it once he did it again." *Id.* at 657.

To guard against the danger of unfair prejudice to the defendant the trial court must balance the relevance and probative value of the evidence with its possible prejudice in accordance with sec. 904.03, Stats.[3] *State v. Tarrell, supra.*

---

[3] Sec. 904.03, Stats., reads as follows:

The defendant here was charged with two counts of sexual intercourse with a child. The role of other-crimes evidence in sex crimes was set forth in *Hendrickson v. State*, 61 Wis.2d 275, 212 N.W.2d 481 (1973) :

> "A 'greater latitude of proof as to other like occurrences' is clearly evident in Wisconsin cases dealing with sex crimes, particularly those involving incest and indecent liberties with a minor child." *Id.* at 279.

The court in *Tarrell* felt that the prior acts

> ". . . demonstrated a propensity to act out his desires with young girls and had a logical connection with the charged offense. They tended to show a general scheme or motive. While the admission of this evidence was prejudicial, it was extremely relevant and was appropriately admitted. The probative value exceeded the prejudicial effect and as such was admissible." *State v. Tarrell, supra* at 658.

This language controls the present situation. The general scheme or motive here involved the defendant's actions toward a group of youngsters with the motive of obtaining future sexual gratification.

Besides corroborating the fact that the defendant had sexual intercourse with the two complainants, the testimony of the three non-complaining witnesses, all minors, also established that the defendant either had or sought to have sexual intercourse with other young girls besides Carmen and Marilyn and that these acts occurred within a year's span. The testimony demonstrates that the defendant in effect opened his home to minors, some of whom were runaways, supplied them with liquor and drugs, in return for which he anticipated and received

---

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

repayment in the form of sexual favors from the young girls. Clearly this evidence tended to establish that the acts of sexual intercourse were all part of a definite, preconceived plan, design or scheme by the defendant. The testimony also establishes that the defendant created the opportunity and circumstances whereby the plan could be carried out. Because the testimony in question tends to establish existence of a preconceived plan and the opportunity to carry it out, the testimony was highly relevant and therefore admissible.

A review of the testimony in this case also establishes that the evidence meets the standards of sec. 904.03, Stats., in that its probative value substantially outweighs any danger of prejudice, confusion or undue delay or waste of time and thus need not be excluded. There were, admittedly, inconsistencies in the testimony of the two complaining witnesses, but the additional evidence from the other witnesses clarified their testimony and can hardly be classified as cumulative or overly prejudicial. Nor was the evidence confusing because of its general nature or lack of specific dates. This court in *Syvock v. State, supra,* has held that ". . . a child cannot be expected to remember exact dates and time sequences after almost a year has elapsed. . . ." *Id.* at 415.

Therefore, the court's admission of the testimony of the three young girls (non-complainants) as an exception to the other crimes exclusion was not reversible error.

*Interests of Justice*

The defendant also asks the court to grant a new trial in the interests of justice under sec. 251.09, Stats. 1975.[4]

---

[4] The statute reads in pertinent part: "In an appeal in the Supreme Court, if it appears from the record that . . . it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from . . . and may

The power of reversal under sec. 251.09 is discretionary and has been "exercised with great caution." *Schultz v. State,* 87 Wis.2d 167, 175, 274 N.W.2d 614, (1979). In *Lofton v. State,* 83 Wis.2d 472, 266 N.W.2d 576 (1978) this court recently reaffirmed the general rule:

"In order to grant a new trial in the interests of justice under sec. 251.09, Stats., this court must be convinced, viewing the record as a whole, that there has been a probable miscarriage of justice or that a new trial would lead to a different result. . . ."

In order for this court to grant a new trial in the interests of justice "Such grave doubt must exist regarding a defendant's guilt to induce the belief that justice has miscarried." *McAdoo v. State,* 65 Wis.2d 596, 612, 223 N.W.2d 521 (1974); *Commodore v. State,* 33 Wis.2d 373, 383, 147 N.W.2d 283 (1967). The record in this case, while perhaps not reflective of an airtight or perfect case, certainly does not raise "grave doubts" as to defendant's guilt and thus it does not meet the requirements for granting a new trial in the interests of justice, as set out in sec. 251.09, Stats. (now sec. 751.06). Therefore, we hold that the defendant is not entitled to a new trial in the interests of justice.

*By the Court.*—Judgment and order affirmed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting in part).* For the reasons I stated in my dissent in *State v. Tarrell,* 74 Wis.2d 647, 661, 247 N.W.2d 696 (1976), I believe the trial court erred in admitting the "other crimes evidence." The evidence falls within the prohibition of sec. 904.04(2), Stats.

---

direct the entry of the proper judgment or remit the case to the trial court . . . for a new trial." Sec. 251.06, Stats., 1975; now renumbered sec. 751.06 by Laws of 1977, ch. 187, s. 76.