WHEELER, Plaintiff in error, v. STATE, Defendant in error.

Supreme Court

*No. 76–728–CR. Argued January 31, 1979.—Decided February 27, 1979.*
(Also reported in 275 N.W.2d 651.)

For the plaintiff in error the cause was argued by *Jack E. Schairer,* assistant state public defender, with whom on brief was *Bronson C. La Follette,* attorney genlic defender.

For the defendant in error the cause was argued by *William L. Gansner,* assistant attorney general, with whom on brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, C.J.   The defendant Wheeler's principal contention is that his conviction is a violation of both the state[1] and federal[2] constitutional double jeopardy provisions.  He additionally argues the evidence is not sufficient to sustain the verdict and the conviction.

On September 26, 1974, a criminal complaint was filed charging the defendant Dion Wheeler with two counts of sexual intercourse with a child in violation of sec. 944.10(2), Stats.  The charges were based on the activities of the defendant which allegedly occurred in the late hours of August 30, 1974, and the early morning hours of August 31, 1974, at the Summit House Achievement Center in the Town of Summit, Waukesha County, Wisconsin.  At the time of the incident Summit House was a licensed residential care facility for children un-

---

[1] Art. I, sec. 8, Wisconsin Constitution, providing in material part: ". . . and no person for the same offense shall be put twice in jeopardy of punishment. . . ."

[2] Art. V, Amendments to the United States Constitution, providing in material part: ". . . nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb. . . ."

der fourteen years of age who were emotionally disturbed and had an I.Q. of less than 85. The defendant Wheeler was employed at the facility, holding the position of Director of Education and Assistant Administrator. N. M. L. and J. M. D., the children involved, were resident patients.

On February 24, 1975, an amended complaint was filed charging the defendant with one count of sexual intercourse with a child (J. M. D.) and one count of taking indecent liberties with a child (N. M. L.)

The defendant entered a plea of not guilty to each of the two counts. A jury trial was held extending over eight days beginning October 6, 1975, before Judge WILLIAM G. CALLOW. On October 15, 1975, the trial court found the jury to be hopelessly deadlocked and, *sua sponte,* declared a mistrial.

The state undertook to reprosecute the defendant. The defendant filed a motion to dismiss the charges on double jeopardy grounds under both the state and federal constitutions. A hearing was held on the motion on February 26, 1976, before Judge CALLOW, and was denied in an order entered the same day.

The second jury trial took place between March 22 and March 27, 1976, before Honorable NEAL NETTESHEIM, County Judge. This trial resulted in a jury verdict of not guilty on the charge of violating sec. 944.-10(2), Stats. (sexual intercourse with a child), and guilty on the charge of violating sec. 944.11(1) (indecent liberties with a child).

The classic test to determine whether a defendant whose trial has been aborted by a mistrial declared, *sua sponte,* by the court without defendant's consent either express or implied, may be retried without violating the double jeopardy clause of the United States Constitution appears in *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580 (1824):

"We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere."

The rule contemplated a case-by-case application of the standard, with broad discretion vested in the trial judge. This point was recently emphasized by the United States Supreme Court in *Illinois v. Somerville,* 410 U.S. 458, 462 (1973), where the following language appears:

"This formulation, consistently adhered to by this Court in subsequent decisions, abjures the application of any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial. The broad discretion reserved to the trial judge in such circumstances has been consistently reiterated in decisions of this Court. In *Wade v. Hunter,* 336 U.S. 684 (1949), the Court, in reaffirming this flexible standard, wrote:

" '. . . a rigid formula is inconsistent with the guiding principles of the *Perez* decision to which we adhere. Those principles command courts in considering whether a trial should be terminated without judgment to take "all circumstances into account" and thereby forbid the mechanical application of an abstract formula. The value of the *Perez* principles thus lies in their capacity for informed application under widely different circumstances without injury to defendants or to the public interest.' *Id.,* at 691.

"Similarly, in *Gori v. United States,* 367 U.S. 364 (1961), the Court again underscored the breadth of a trial judge's discretion, and the reasons therefor, to declare a mistrial.

" 'Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be at-

tained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment.' *Id.*, at 368."

In 1975, in *State v. Calhoun*, 67 Wis.2d 204, 226 N.W. 2d 504 (1975), this court concluded that federal and state constitutional provisions prohibiting double jeopardy were for all practical purposes identical and that we acknowledge the decisions of the United States Supreme Court control the issue. In *Calhoun*, as in the United States Supreme Court cases cited therein and the cases cited in the briefs of the parties, the courts have uniformly held the decision as to whether to grant a mistrial lies within the sound discretion of the trial judge. From a reading of the cases it is apparent that great deference is accorded the discretion exercised by trial judges in the so-called "hung jury" cases.

In the first trial of this case the declaration came after the jury had deliberated for a period of about nine hours,[3] and had been reinstructed by the court at the jury's request on reasonable doubt and presumption of innocence. In addition, again at the jury's own request, the testimony of the two alleged child victims (N. M. L. and J. M. D.) was read to the jury by the reporter.

When the court was informed by the bailiff that he had been notified by the foreman that the jury was unable to reach a verdict, the following proceedings took place:

"(Jury returns to jury box)

"*The Court:* Ladies and gentlemen of the jury panel, the Bailiff has informed me that your foreman has advised him that it appears you are unable to reach a ver-

[3] The deliberation occurred in two stages: from 3:55 p.m. to 9:30 p.m. on October 14, 1975, and from 11:10 a.m. to 2:23 p.m. on the following day.

dict. I will ask you a question and I want you to retire to the jury room and deliberate on the question I ask you so that when the foreman answers my question, it will be your collective answer. Is your deadlock as to both Count 1 and Count 2 rather than just one of the two counts? I would ask that you retire to the jury room and discuss the matter.

"*Jury Foreman:* I can answer the question now.

"*The Court:* Very well, if you have discussed it, I will accept your answer.

"*Jury Foreman:* We are at a deadlock on both counts.

"*The Court:* You feel this jury panel cannot reach a verdict as to the two charges given to you for verdict?

"*Jury Foreman:* Yes, I do.

"*The Court:* In that event, do either of you wish to be heard in the absence of the jury?

"*Mr. Coffey:* No, sir.

"*Mr. Cahill:* No sir.

"*The Court:* Since you are hopelessly deadlocked, the Court has no choice but excuse you and accept your decision that you are unable to reach a decision. . . .

" (Jury leaves)

"*The Court:* It would appear the Court has no choice but declare a mistrial at this time. Mr. Coffey, do you wish to be heard?

"*Mr. Coffey:* No.

"*The Court:* Mr. Cahill?

"*Mr. Cahill:* No.

"*The Court:* I have no choice but declare a mistrial. . . ."

The defendant now contends that the trial court erroneously failed to consider possible alternatives prior to declaring a mistrial.

We do not believe the defendant's objections under the facts of this case have merit. The court's colloquy with the foreman clearly established the fact of a deadlock. Two possible approaches which have been used to assist juries who find themselves unable to reach a verdict, namely, reinstructing the jury and rereading portions of trial testimony, had already been tried at the jury's request. The court's statement that it had "no choice" im-

plies a weighing of possible alternatives and a thoughtful exercise of discretion.

The situation of a hung jury presented in this case is precisely the situation involved in *Perez, supra.*[4] The record reveals that the trial court validly exercised its discretion in light of the facts of the particular case which—it should be remembered—involved an offense of a uniquely sensitive nature with a special social stigma.

We conclude the defendant's retrial was not barred by the double jeopardy clause of either the federal or the state constitutions. The judgment of conviction must be affirmed.[5]

The defendant also challenges the sufficiency of the evidence supporting his conviction following the second trial. This argument focuses solely on the fact that N. M. L.'s trial testimony that the defendant had had sexual intercourse with her was contradicted and compromised by the notations ("virginal,"—"intercourse impossible") made on her patient's card by the physician who examined her on the morning following the incident. First of all, it should be noted that proof of sexual intercourse is not an element of the crime involved.[6]

---

[4] *See also United States v. Sanford,* 429 U.S. 14 (1976).

[5] The state suggests that the defendant's failure to object might be taken as consent to the mistrial or waiver of his double jeopardy rights. A knowing, voluntary, and intelligent waiver of a double jeopardy right is not a condition to permitting a retrial following a mistrial. *United States v. Dinitz,* 424 U.S. 600, 609, n. 11 (1976). However, in light of the facts of this case neither "consent" nor "waiver" issues need be or should be addressed.

[6] The instruction to the jury read as follows:

"Before the defendant may be found guilty of indecent behavior with a child, the State must prove by evidence which satisfies you beyond a reasonable doubt that there were present the following two elements of this offense:

Second, the testimony of the physician at the trial indicated that the notes merely meant that he had been unable to make a final diagnosis as to whether or not she had recently had or ever had intercourse. Finally, even if the notation is viewed as impeaching N. M. L.'s credibility, the credibility of the witnesses is the province of the trier of fact. *Gauthier v. State,* 28 Wis.2d 412, 416, 137 N.W.2d 101 (1965). This court's review is limited to determining "whether the evidence adduced, believed and rationally considered . . . was sufficient to prove defendant's guilt beyond a reasonable doubt." *State ex rel. Kanieski v. Gagnon,* 54 Wis.2d 108, 113, 194 N.W.2d 808 (1972).

We have reviewed the record and have no hesitancy in concluding there is ample credible evidence to support the verdict and conviction.

*By the Court.*—Judgment and order affirmed.

Callow, J., took no part.

"First, that the defendant took indecent liberties with N;

"Second, that N was a female under the age of 16 years;

"The phrase 'indecent liberties' means 'such liberties as the common sense of society would regard as indecent and improper.' "