**UNITED STATES of America, Appellee,**

v.

**William S. BRADFORD, Appellant.**

**No. 679, Docket 80–1380.**

United States Court of Appeals, Second Circuit.

Argued Jan. 13, 1981.

Decided March 19, 1981.

F. Mac Buckley, Hartford, Conn., for appellant.

Holly B. Fitzsimmon, Asst. U. S. Atty., Bridgeport, Conn. (Richard Blumenthal, U. S. Atty., D. Connecticut, Michael Plantamu-

ra, Law Student Intern, Bridgeport, Conn., of counsel), for appellee.

Before MOORE, MANSFIELD and MULLIGAN, Circuit Judges.

MANSFIELD, Circuit Judge:

This appeal raises the question of the extent to which a sentencing judge may take into consideration the defendant's refusal to cooperate with law enforcement authorities by providing incriminatory information with respect to others. We hold that the sentencing judge properly took into consideration this factor among others.

William S. Bradford appeals from a judgment of the District Court for the District of Connecticut entered on September 11, 1980, by Judge Jose A. Cabranes upon his plea of guilty to three counts of an information charging use of a telephone to facilitate distribution of a controlled substance, 21 U.S.C. § 843(b), and unlawful possession of cocaine, 21 U.S.C. § 844(a). Bradford was sentenced to serve consecutive terms of imprisonment totalling six years and to pay a $30,000 fine. His two co-defendants, Ulysses Jose Orduz and William Edward Moran, Jr., who pleaded guilty to similar informations, received substantially lesser sentences.

The guilty pleas were entered after three days of trial upon indictments charging the three defendants with violations of federal narcotics laws, for which the informations to which they pleaded guilty were substituted. The record reveals that Bradford was arrested when he attempted to sell a pound of cocaine to undercover agents pursuant to negotiations made by the co-defendants, two college students, as the front men. Upon the agents' identifying themselves, Bradford fled the scene, discarding a shoulder bag containing the cocaine, and was apprehended in a nearby field. Prior to imposing sentence Judge Cabranes received a very substantial amount of data bearing on the sentence to be imposed, including a 38-page memorandum from a psychiatrist, numerous letters on Bradford's behalf, and a pre-sentence report from the probation office.

At the sentencing hearing the trial judge noted various factors considered by him as bearing on the sentence to be imposed, including that Bradford, 47 years old, had a "strong motivation for greed," that he had "corrupted" and "victimized" his two younger co-defendants, that he was the source of the cocaine and "the person with the most to gain from the plot," and that he had "refused to assist the Government's efforts to detect and prosecute the perpetrators of such large-scale criminal activity." Judge Cabranes further stated that it was "appropriate . . . to take into account this [latter] factor, along with the other relevant considerations" in sentencing Bradford.

In an addendum to the pre-sentence report Bradford had stated with reference to his failure to cooperate that his source was "not a very active dealer," that the source had "been a friend . . . and always treated me with respect and honesty," and that Bradford did not want to furnish the supplier's name because "I fear the consequences for other people if I were to do so. I do not want to put my family or myself in danger."

After sentence was imposed, Bradford's counsel stated:

"Lastly, your Honor, with respect to the reasons why Mr. Bradford did not cooperate, I can only stand on the record in his response that he was concerned with the potential harm to people that might come from that. I realize that is a factor the Court can consider, but I think that it should be clear as to what the reason he did not do so was and that was not brought out in our earlier remarks." (Tr. 53).

However, at no time, before or after sentence, did Bradford offer to furnish evidence or details, *in camera* or otherwise, in support of his statement.

## DISCUSSION

■ Bradford contends that the sentencing judge here erred in taking into consideration his refusal to cooperate, at least

after he had stated to the court his reasons for not doing so. Subject to the caveats noted below, we disagree. A defendant's cooperation may, of course, be taken into consideration by a sentencing judge as a mitigating factor tending to evidence his potential for rehabilitation. *United States v. Sweig*, 454 F.2d 181 (2d Cir. 1972). On the other hand, a sentence may not, because of a defendant's refusal to cooperate, be increased or additional punishment imposed beyond what would otherwise have been meted out. *DiGiovanni v. United States*, 596 F.2d 74 (2d Cir. 1979).

"Our decisions in *United States v. Sweig*, 454 F.2d 181 (2d Cir. 1972), and *United States v. Vermeulen*, 436 F.2d 72 (2d Cir. 1970), cert. denied, 402 U.S. 911, 91 S.Ct. 1390, 28 L.Ed.2d 653 (1971), are not in point. In each of these cases we ruled only that the sentencing judge, in his discretion, may take into account as a mitigating factor the defendant's voluntary cooperation with the authorities. Nowhere have we suggested that the defendant's refusal to cooperate may be considered in increasing the sentence he would otherwise receive. It is one thing to extend leniency to a defendant who is willing to cooperate with the government; it is quite another thing to administer additional punishment to a defendant who by his silence has committed no additional offense." *United States v. Ramos*, 572 F.2d 360, 363 n.2 (2d Cir. 1978).

Within these limitations, as Judge Moore pointed out in *United States v. Barnes*, 604 F.2d 121, 154 (2d Cir. 1979), a court may in imposing sentence

"consider a defendant's cooperation or lack thereof as long as *all* factors are considered. *United States v. Vermeulen*, 436 F.2d 72 (2d Cir. 1970). Thus, reference to a lack of cooperation as a factor does not render a sentence subject to resentencing because of any infirmity therein."

The potential relevance of a defendant's refusal to cooperate was recognized by the Supreme Court in *Roberts v. United States*, 445 U.S. 552, 558, 100 S.Ct. 1358, 1363, 63 L.Ed.2d 622 (1980), where it stated:

"The petitioner, for example, was asked to expose the purveyors of heroin in his own community in exchange for a favorable disposition of his case. By declining to cooperate, petitioner rejected an 'obligatio[n] of community life' that should be recognized before rehabilitation can begin. See Hart, The Aims of the Criminal Law, 23 Law & Contemp.Prob. 401, 437 (1958). Moreover, petitioner's refusal to cooperate protected his former partners in crime, thereby preserving his ability to resume criminal activities upon release. Few facts available to a sentencing judge are more relevant to ' "the likelihood that [a defendant] will transgress no more, the hope that he may respond to rehabilitative efforts to assist with a lawful future career, [and] the degree to which he does or does not deem himself at war with his society." ' *United States v. Grayson, supra* [438 U.S. 41], at 51 [98 S.Ct. 2610 at 2616, 57 L.Ed.2d 582], quoting *United States v. Hendrix*, 505 F.2d 1233, 1236 (CA2 1974)."

However, as Justice Brennan stated in a concurring opinion:

"It is of comparable importance to assure that a defendant is not penalized on the basis of groundless inferences. At the least, sentencing judges should conduct an inquiry into the circumstances of silence where a defendant indicates before sentencing that his refusal to cooperate is prompted by constitutionally protected, or morally defensible, motives. Furthermore, especially where conviction is based upon a guilty plea, it may be advisable for trial judges to raise the question of motive themselves when presented with a prosecutorial recommendation for severity due to an offender's noncooperation. During the Rule 32 allocution before sentencing, Fed.Rule Crim.Proc. 32(a)(1), the defendant could be asked on the record whether he has a reasonable explanation for his silence; if a justification were proffered, the judge would then proceed to determine its veracity and reasonableness. Such an allocution procedure would reduce the danger of erroneous inference

and provide a record to support sentencing against subsequent challenge. Cf. *McCarthy v. United States*, 394 U.S. 459, 466–467 [89 S.Ct. 1166, 1170, 22 L.Ed.2d 418] (1969)." 445 U.S. at 563, 100 S.Ct. at 1366.

 Applying these principles here, the sentencing judge properly considered Bradford's lack of cooperation along with other relevant factors in determining the sentence to be imposed and there is no evidence that the sentence was increased because of Bradford's non-cooperation. The only issue of significance is whether, once Bradford asserted fear for himself and his family as grounds for non-cooperation, the judge was under a duty to search for evidence or details bearing on the genuineness of his apprehension or the weight to be given to his non-cooperation, which could normally be viewed as indicating lack of fitness for rehabilitation.

We believe that the burden of adducing such additional facts should be upon the defendant rather than on the court. The defendant and his counsel are the parties most likely to possess any such evidence, not the prosecutor or the court. The defendant presumably knows the circumstances (e. g., threats to himself or others) upon which he bases his alleged apprehension. The court's only obligation is to provide such means as are available, including an *in camera* hearing or a request for the services of the Department of Justice's Witness Protection Program, to assure such confidentiality as will permit an evaluation of the weight to be given to the claim.

Here the district judge, who heard several days of testimony in the case, examined numerous submissions bearing on the sentence, and observed Bradford, was in a far better position to determine what credibility, if any, was to be extended to his claim than are we. Apparently the judge concluded that the circumstances did not warrant a reduction of the sentence below what he considered otherwise appropriate.

We therefore affirm the conviction. If, however, Bradford should seek upon a motion for reduction of his sentence under Rule 35, F.R.Cr.P., to offer evidence in support of his claim of fear for himself and his family, we would expect the sentencing judge to be guided by the foregoing principles.