STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael J. FOSSE, Defendant-Petitioner.†

Court of Appeals

*No. 87–2186–CR–LV. Submitted on briefs February 16, 1988.—*
*Decided April 12, 1988.*

(Also reported in 424 N.W.2d 725.)

† Petition to review pending. This petition was not disposed of at the time the volume went to press. Its disposition will be reported in a later volume.

For defendant-petitioner, there were briefs by *Paul M. Goetz,* of Colfax.

For plaintiff-respondent there was a brief by *Donald J. Hanaway,* attorney general, and *Daniel J. O'Brien,* assistant attorney general.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   We grant Michael J. Fosse's petition to review a nonfinal order denying his motion to dismiss based on a claim of double jeopardy. Fosse contends that the trial court's mistrial order during

an earlier trial on the same charges was an abuse of discretion. We conclude that further prosecution on these charges is not barred because the trial court did not abuse its discretion by ordering the mistrial.

Fosse was charged with arson, operating a motor vehicle without the owner's consent, and marijuana possession. Fosse pled no contest to the marijuana possession charge and a jury trial followed on the remaining charges.

Prior to the trial, defense counsel moved the court to advise three of the state's witnesses of their fifth amendment privilege against self-incrimination and their right to counsel. The court stated that it would address such issues if they arose at trial.

The district attorney then moved the court to prohibit defense counsel from advising these witnesses not to testify unless they were granted immunity. The district attorney informed the court that he had no intention of charging any of these witnesses in connection with the incident. However, he expressed concern that this advice from defense counsel would have a "debilitating effect" on the witnesses' willingness to testify.

Defense counsel argued that he had the right to advise these witnesses of their fifth amendment right to counsel and their privilege against self-incrimination. The trial court disagreed. The court concluded that the request for immunity must come from the witness and that the role of the court or defense counsel was not to advise them of these rights prior to their inquiry. The jury was then impaneled, sworn, and opening statements were presented.

During the noon recess, the district attorney informed the trial court that a law intern for defense counsel had contacted one of the state's witnesses that

morning and told her that she could be charged or "could get into trouble if she testified." The district attorney represented that this conversation intimidated this witness.

The district attorney then elicited testimony from the arson victim that defense counsel had contacted him the day before trial with an offer of $100 cash to settle the case. The witness stated that he believed this was done "as a way of buying me out."

Defense counsel subsequently acknowledged that he also contacted another of the state's witnesses. He stated that he informed the witness of his immunity privileges and that "as a possible suspect," he was entitled to his own counsel. The witness replied that he did not desire the assistance of counsel even though he had not been granted immunity.

The district attorney asked the court to grant immunity to these state's witnesses and to preclude the defense from impeaching them on cross-examination with proof that they had been granted immunity because defense counsel's conduct had necessitated the grant of immunity. Defense counsel denied any intent to intimidate the witnesses and offered to withdraw as Fosse's attorney if the court concluded that his conduct had been improper. The trial court declined to grant immunity and advised Fosse's attorney that the decision to withdraw would rest with Fosse and defense counsel.

After the noon recess, defense counsel advised the trial court that Fosse wanted him to remain as counsel and that he would not withdraw. The district attorney then moved for a mistrial. The court indicated that it would proceed with the trial and deal with the mistrial issue if it should arise during the trial.

Defense counsel next advised the trial court that he might have to be called as a witness at the trial regarding his contacts with the state witnesses. The district attorney agreed that this would likely occur. The trial court then granted the state's motion for a mistrial because it concluded that the anticipated testimony by defense counsel necessitated a mistrial or a reversal on appeal should Fosse be convicted.

The jury was discharged, and the case was placed on the calendar for retrial. Defense counsel at the original trial withdrew, and Fosse's new attorney moved to dismiss on the ground of double jeopardy. The trial court denied the motion because the mistrial was the result of the original defense counsel's misconduct and because granting the mistrial was necessary for the reasons set forth in the record of those proceedings.

Jeopardy attaches at the time a jury is impaneled and sworn. Section 972.07(2), Stats. However, the double jeopardy prohibition does not preclude a trial court from terminating a trial without the defendant's consent if it finds a "manifest necessity" for doing so or "the ends of public justice would otherwise be defeated." *Wheeler v. State,* 87 Wis. 2d 626, 630, 275 N.W.2d 651, 653 (1979) (quoting *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 580 (1824)). The "manifest necessity" test requires a "high degree" of necessity and precludes a trial court from ordering a mistrial irrationally or irresponsibly. *State v. Copening,* 100 Wis. 2d 700, 711, 303 N.W.2d 821, 827 (1981).

The decision whether to grant a mistrial is vested within the sound discretion of the trial court. *Wheeler,* 87 Wis. 2d at 630, 275 N.W.2d at 653. "[O]n review, the

test is whether, under all the facts and circumstances, giving deference to the trial court's first-hand knowledge, it was reasonable to grant a mistrial under the 'manifest necessity' rule." *Copening,* 100 Wis. 2d at 710, 303 N.W.2d at 826–27. The trial court's exercise of discretion is entitled to "special respect" in cases where defense counsel's misconduct may serve to bias the jury against the state. *Arizona v. Washington,* 434 U.S. 497, 510–13 (1978).

Fosse argues that the trial court abused its discretion by granting a mistrial because of defense counsel's misconduct. He contends that neither defense counsel nor his staff was guilty of misconduct. We believe that their contact with the state's witnesses was a violation of Supreme Court Rules and represents misconduct.

We agree that these witnesses have the fifth amendment right to counsel and against self-incrimination, and the statutory right to seek immunity from prosecution in exchange for testimony. Section 972.08, Stats. We also agree that defense counsel has a right to fully investigate the circumstances of the charges and to speak with the state's witnesses, if they are willing to do so.

However, Sup. Ct. R. 20.38(2) provides that during the course of representing a client a lawyer may not:

> Give advise to a person who is not represented by a lawyer, other than the advice to secure counsel, if the interests of the person are or have a reasonable possibility of being in conflict with the interests of the client.

Effective January 1, 1988, Rule 20.38 has been repealed and recreated to provide:

> In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

Sup. Ct. R. 20:4.3

The comment to Sup. Ct. R. 20:4.3 discusses the rationale behind this new rule:[1]

> An unrepresented person, particularly one not experienced in dealing with legal matters, might assume that a lawyer is disinterested in loyalties or is a disinterested authority on the law even when the lawyer represents a client. During the course of a lawyer's representation of a client, the lawyer should not give advice to an unrepresented person other than the advice to obtain counsel.

The clear import of these rules and comment is to avoid situations where an unrepresented person may follow advice not in that person's best interest because such advice was given by an attorney whose loyalty lies not with the person to whom the advice is given, but to another.

Applying these precepts to this case, we conclude that defense attorney's and his staff's conduct with the state's witnesses was improper. First, the state's

---

[1]We note that the former Sup. Ct. R. 20.38(2) has no direct counterpart in the present Sup. Ct. R. 20:4.3. However, in the context of our case, there is no substantive difference. Therefore, the comment to Sup. Ct. R. 20:4.3 can be appropriately used to explain the intent of Sup. Ct. R. 20.38(2).

witnesses were unrepresented and their interests conflicted with Fosse's interests. Second, defense counsel and his staff advised the state's witnesses that they might face criminal prosecution and that they had a right not to testify unless granted immunity. These statements constituted legal advice that may have misled the witnesses or caused them to act in a manner not in their own best interests. Finally, defense counsel was not disinterested. Fosse would certainly benefit if the state's witnesses either did not testify or testified under a grant of immunity that Fosse's attorney could then use to attack the witnesses' credibility at trial.

A prosecutor giving similar advice to a defense witness was soundly condemned in *United States v. Smith,* 478 F.2d 976 (D.C. Cir. 1973). In *Smith,* which involved a homicide charge, the prosecutor intended to show that the victim of the shooting was unarmed. Upon hearing that a defense witness would testify that the victim had a razor in his hand at the time of the shooting, the prosecutor advised this witness that he could be charged with carrying a concealed weapon or as an accessory after the fact because he admitted to giving the murder weapon to another man after the shooting. The court condemned the prosecutor's conduct as intending to intimidate the witness:

> We think the prosecutor's warning was plainly a threat. ... The government argues in its brief that Twitty had a right to be advised that he might incriminate himself and be subject to prosecution if he elected to testify, and the government suggests that the prosecutor was only protecting Twitty's rights when he warned him. Even if the prosecutor's motives were impeccable, however, the implication of what he said was calculated to

transform Twitty from a willing witness to one
who would refuse to testify, and that in fact was
the result. . . . If the prosecutor thought the witness
should be advised of his rights then he should have
suggested that the court explain them to Twitty.
The matter would then have been presented to
Twitty by the court without any threats or implica-
tion of retaliation.

*Id.* at 979; *see also United States v. Thomas,* 488 F.2d
334, 336 (6th Cir. 1973).

The restrictions in *Smith* also apply to the con-
duct of defense counsel. Here, defense counsel pro-
fessed to have had no intention of intimidating these
witnesses. However, the conduct of defense counsel
and his staff in giving such advice had little effect
other than to dissuade the witness from testifying
voluntarily or to create a vehicle to impeach the
witnesses' testimony, if they testified under a grant of
immunity. Accordingly, the trial court correctly con-
cluded that defense counsel's conduct was improper
and such misconduct compromised the fairness of the
trial.

Apart from the misconduct, the trial court proper-
ly exercised its discretion by granting a mistrial when
advised by both attorneys that it was likely that
defense counsel would become a witness during the
trial. Fosse contends that the judge should have called
the state's witnesses to determine whether they were
intimidated. Fosse's contention misses the point.

Irrespective of whether intimidation existed, the
trial court was faced with the choice of proceeding
with a trial, during which defense counsel would
become a witness, or declaring a mistrial and resolv-
ing the matter prior to a new trial. The trial court
attempted to complete the trial, denying a prior

request for mistrial. Only when it became clear that defense counsel would not withdraw from the case and that he would likely be called as a witness did the court declare a mistrial.

The court's ruling was consistent with declaring a mistrial when "the ends of public justice would otherwise be defeated." *See Perez,* 22 U.S. at 580. Had the trial continued, the state's witnesses may have refused to testify, or have testified equivocally or inconsistently as a result of defense counsel's tactics. If the district attorney had granted the witnesses immunity, defense counsel could then use this evidence to attack their credibility without having to show that the grant of immunity was necessitated by defense counsel's actions. However, if the district attorney chose to rebut this impeachment with proof of the defense tactics, he would have called defense counsel to testify thereby potentially threatening Fosse's right to effective counsel. Had defense counsel testified, he could have been discredited, which in turn could have discredited Fosse in the eyes of the jury. Accordingly, under the circumstances of this case, the trial court did not abuse its discretion by ordering a mistrial. A retrial on the same charges is not a violation of Fosse's right against double jeopardy.

*By the Court.*—Order affirmed.