787 P.2d 1247

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Terry CALLAWAY,
Defendant–Appellant.**

**No. 10966.**

Court of Appeals of New Mexico.

Nov. 7, 1989.

Hal Stratton, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Michael E. Vigil, Marchiondo, Vigil & Voegler, P.A., Albuquerque, for defendant-appellant.

## OPINION

ALARID, Judge.

Defendant appeals his convictions, upon retrial, on two counts of second-degree criminal sexual penetration (CSP II), and one count each of criminal sexual contact (CSC), aggravated battery, kidnaping, and conspiracy to commit CSP. He raises three issues in his brief: (1) whether retrial, after his first trial ended in a "manifest necessity" mistrial, constituted double jeopardy; (2) whether a new trial should have been granted on the basis of newly discovered evidence; or in the alternative, whether he was denied effective assistance of counsel; and (3) whether his sentence contains an

illegal condition. Other issues listed in the docketing statement but not briefed are deemed abandoned. *State v. Fish*, 102 N.M. 775, 701 P.2d 374 (Ct.App.1985). We affirm.

## DOUBLE JEOPARDY

■ At the first trial, the victim testified that, prior to the attack, she spoke to State Police Officers Garcia and Medina concerning a month-long campaign of harassment and threats by defendant, co-defendant and an unidentified third man. The state believed the defense intended to call the officers for their testimony that they did not believe the victim's allegations of harassment. The state made a motion in limine to exclude evidence concerning the officers' opinions of the victim's veracity. Defense counsel represented that he was planning to ask Officer Medina his opinion of the victim's credibility. Counsel stated that he had not planned to ask Officer Garcia his opinion. The trial court granted the state's motion, and instructed defense counsel to tell Officer Medina not to state his opinion. The trial court specifically told counsel that there would be an immediate mistrial if Officer Medina gave his opinion. Although the trial court directed counsel to inform only Officer Medina of his ruling, defense counsel was on notice that any opinion evidence concerning the victim's credibility was prohibited. Defense counsel asked Officer Garcia on direct examination if he had done anything to dissuade the victim from filing a complaint. The witness responded that he had not dissuaded the victim, but that he had not believed what she was saying. The trial court immediately declared a mistrial. After the jury left the courtroom, the trial court stated its belief that counsel had been probing for the officer's response. Counsel denied soliciting the response but admitted that he had not cautioned Officer Garcia about the court's ruling in limine. Defense counsel told the court he did not think Officer Garcia would volunteer such opinion so he had not discussed the court's admonition with him. The trial court noted that even if counsel had not acted intentionally, he violated his duty to inform the officer not to give his opinion.

Defendant contends the trial court's sua sponte declaration of a mistrial was not based upon reasons of manifest necessity. This being the case, he argues his retrial constituted double jeopardy.

■ Both the federal and state constitutions prohibit the state from twice subjecting a person to criminal prosecution for the same offense. U.S. Const. amend. V; N.M. Const. art. II, § 15. The double jeopardy clause also protects a criminal defendant against being retried in some instances when the criminal proceeding was aborted before a final judgment was obtained. *State v. Saavedra*, 108 N.M. 38, 766 P.2d 298 (1988). Jeopardy attaches when the jury is sworn in the first trial, and if the defendant objects to a mistrial he cannot be retried once jeopardy attaches, unless the mistrial was found to have been declared for reasons of "manifest necessity." *Id.* The question upon appellate review is whether the trial court exercised its sound discretion in deciding there was a manifest necessity for the declaration of a mistrial. *State v. Sedillo*, 88 N.M. 240, 539 P.2d 630 (Ct.App.1975).

■ The standard for determining the existence of manifest necessity to declare a mistrial involves carefully weighing the defendant's right to have his trial completed against the public's interest in a fair trial and just judgment. *State v. Messier*, 101 N.M. 582, 686 P.2d 272 (Ct.App.1984). Thus, a grant of mistrial is not proper merely to allow the state to strengthen its case upon retrial, or to secure the attendance of a witness which it neglected to subpoena or have present at trial. *Id.* The prosecutor must shoulder a heavy burden to justify the mistrial if the double jeopardy bar is to be avoided. *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); *State v. Saavedra.*

In *Porter v. Ferguson*, 324 S.E.2d 397 (W.Va.1984), the court considered a case

similar in part to the present case. In *Porter,* defense counsel violated an order of the trial court issued after an in-limine hearing. The trial court directed that defense counsel not inquire into the fact of a previous arrest of a key prosecution witness on charges unrelated to those pending against the defendant. The court upheld the trial court's sua sponte declaration of a mistrial, observing that a general rule has evolved to the effect that improper conduct of defense counsel which prejudices the state's case may give rise to manifest necessity for the granting of a mistrial. The court found that the trial court did not abuse its discretion because defense counsel's questioning of the witness was in violation of the court's in-limine order, that defense counsel had been cautioned in advance not to conduct such inquiry and despite such warning counsel embarked on the line of questioning, and that the effect of such questioning prejudiced the state's case. Under these facts, the court in *Porter* determined that the trial court did not act precipitously, and the sua sponte granting of a mistrial came within the ambit of manifest necessity.

Defendant maintains the trial court abused its discretion in declaring the mistrial by acting hastily and failing to consider alternatives.[1] We hold that under the circumstances of this case, the trial court properly declared the mistrial.

■ Explicit findings on the presence of manifest necessity are not determinative of the issue involved, but the record must contain sufficient justification for the granting of the mistrial. *Arizona v. Washington; State v. Messier.* Where the conduct of the defense may have affected the partiality of the jury, the trial court's evaluation of the need for a mistrial is accorded the highest degree of respect. *Arizona v. Washington; see also State v. Fosse,* 144 Wis.2d 700, 424 N.W.2d 725 (Ct.App.1988). We agree with the state that situations in which the conduct of the defense has affected the trial create a difficult dilemma for the trial judge. If the trial court does not grant the mistrial, the prejudice could result in an unjust acquittal. On the other hand, if the trial court grants the mistrial the defendant will be discharged if an appellate court disagrees with the finding of manifest necessity. Under these circumstances, the trial court's decision should be accorded considerable deference.

Officer Garcia's comment seriously prejudiced the state's case. The state presented little evidence corroborating the victim's testimony. There was scant physical evidence of a sexual assault. The defendant presented alibi testimony. Thus, the victim's credibility was crucial to the state's case.

We find little support for defendant's position from our decisions in *Sedillo* and *State v. De Baca,* 88 N.M. 454, 541 P.2d 634 (Ct.App.1975). In *Sedillo,* the defense misconduct did not go to the "very vitals of the trial itself." *Id.,* 88 N.M. at 242, 539 P.2d at 632. By contrast, Officer Garcia's comment in this case was potentially devastating since the state's case was based almost entirely upon the victim's credibility. In *De Baca,* the alleged jury tampering did not create any possibility of juror bias. In this case, there can be little question that the officer's comment materially undermined the victim's credibility before the jury.

■ We also do not believe that the state used the mistrial to its tactical advantage by presenting new evidence and witnesses. The state did not move for the mistrial. *See State v. Messier.* Similarly, our review of the record does not support an inference that the state sought to gain, or would gain, any advantage from a mistrial. *See id.* The fact that the state did not present the identical case on retrial is not determinative of this issue. *Compare United*

1. We note that prior to the trial court's order declaring a mistrial, the record indicates that defense counsel had moved for a mistrial on differing grounds on three occasions. These motions were denied.

*States v. Kin Ping Cheung,* 485 F.2d 689 (5th Cir.1973). The trial court's exercise of discretion concerning whether to grant a mistrial is entitled to some weight in cases where defense counsel's failure to comply with a ruling of the court may serve to bias the jury against the state. *See State v. Fosse; see also United States v. Kwang Fu Peng,* 766 F.2d 82 (2d Cir.1985).

■ Defendant argues that the trial court did not explore possible alternatives to a mistrial. A trial court has a duty to inquire into the alternatives before declaring a mistrial. *State v. De Baca.* The trial court, however, is not required to make a detailed record of each alternative considered before declaring a mistrial. *Id.; State v. Messier.* The trial court's declaration of a mistrial should not be overturned solely because it failed to articulate all the factors which were considered in the exercise of its discretion. *See Arizona v. Washington.* We recognize that the trial judge's vitriolic outburst in his sua sponte declaration of a mistrial was inappropriate and we do not condone such conduct. However, just prior to the in-court presentation of Officer Garcia's testimony, the court in-chambers ruled on the state's motions in limine, and the trial judge stated that it would be improper to question the officers concerning their belief as to the victim's credibility and that a mistrial would result if such testimony were proffered. The in-chambers hearing and ruling by the trial court indicates that the court considered such questioning to be improper and of such seriousness such as not to be curable by an admonition to the jury. *Compare State v. Gardner,* 103 N.M. 320, 706 P.2d 862 (Ct.App.1985) (prejudicial response generally cured by prompt admonition from the trial court). Under the circumstances here presented, the trial court could reasonably conclude that an admonition to the jury would be insufficient to remove the prejudice resulting from the officer's comment. *See Arizona v. Washington.* This is especially true where the victim's credibility was the crucial factor in the state's case. We believe the trial court was in the best position to evaluate how Officer Garcia's improper opinion affected the jury. *See id.* Moreover, defense counsel was on notice that a mistrial would be declared if an opinion of the victim's credibility was introduced. Balancing defendant's right to have his trial completed and the public's interest in a fair trial and just judgment, we conclude the record contains sufficient justification for the trial court's declaration of the mistrial.

## MOTION FOR NEW TRIAL

■ At the sentencing hearing, defendant's newly retained counsel made an offer of proof that defendant's ex-wife would testify that the Callaways had engaged in "wife-swapping" with the victim and her husband several years before the attack. Defendant also represented that his former wife would testify that the victim was present at his home on numerous occasions when Mrs. Callaway was not present. Counsel represented that Mrs. Callaway had refused to communicate this information to trial counsel, James Klipstine, because Klipstine had represented defendant in their divorce. The new evidence was offered to impeach the victim's testimony that she had never had an affair with defendant and was never in his home when Mrs. Callaway was not present. The trial court denied the motion.

■ A motion for new trial on the basis of newly discovered evidence must meet six requirements: (1) it will probably change the result if a new trial is granted; (2) it must have been discovered since the trial; (3) it could not have been discovered before the trial by the exercise of due diligence; (4) it must be material; (5) it must not be merely cumulative; and (6) it must not be merely impeaching or contradictory. *State v. Volpato,* 102 N.M. 383, 696 P.2d 471 (1985). The trial court's denial of a motion for new trial will not be disturbed on appeal unless the ruling is arbitrary, capricious or beyond reason. *State v. Smith,* 92 N.M. 533, 591 P.2d 664 (1979).

Defendant has not demonstrated that the evidence could not have been discovered before trial by the exercise of due diligence. An out-of-state subpoena was issued for Mrs. Callaway's attendance at the first trial, and she was listed as a witness for the second trial. Moreover, if Mrs. Callaway's allegations were true, they would have been known to defendant. Thus, counsel could have discovered the evidence about the alleged affair through the use of due diligence. Defendant's motion for a new trial was properly denied.

■ Alternatively, defendant argues he was denied effective assistance of counsel. At a post-conviction motion, defendant represented to the court that he told his trial counsel that the victim told defendant that he was the father of her daughter. Defendant contends this evidence was material to the reasons given by the victim for changing her story. The victim testified that she did not originally name defendant because he threatened her daughter. Defendant asserts that evidence that the victim told him that he was the father of her daughter would have undermined the credibility of the victim's assertions concerning why she changed her account. Trial counsel did not elicit this information from the victim on cross-examination, or from the defendant when he testified.

An accused is entitled to effective representation of counsel. *State v. Dean*, 105 N.M. 5, 727 P.2d 944 (Ct.App.1986). The test for determining whether an accused has been afforded effective assistance of counsel is whether defense counsel exercised the skill, judgment and diligence of a reasonably competent defense attorney. *Id.* Defendant bears the burden of showing both the incompetence of his attorney and proof of prejudice. *State v. Talley*, 103 N.M. 33, 702 P.2d 353 (Ct.App.1985). This court will not attempt to second-guess the tactics and strategy of trial counsel on appeal. *State v. Helker*, 88 N.M. 650, 545 P.2d 1028 (Ct.App.1975), *cert. denied*, 429 U.S. 836, 97 S.Ct. 103, 50 L.Ed.2d 102 (1976). We believe the matters complained

of by defendant went to trial tactics and strategy. *See State v. Trejo*, 83 N.M. 511, 494 P.2d 173 (Ct.App.1972) (decision to call witnesses, cross-examination are matters of tactics and strategy).

## DEFENDANT'S SENTENCE

■ The trial court imposed the basic sentence for each offense. Each basic sentence was to be served consecutively, for a total of 34 and one-half years. The trial court noted the premeditated nature of the attack, citing evidence of a month-long campaign of terror perpetrated against the victim by the defendant prior to the crimes. The trial court offered to cut defendant's sentence in half if he provided information pertaining to the third individual involved in the attack. (The same offer was made to co-defendant Molinar.) The victim testified that a third man took part in the crimes. This individual was never identified. Defendant argues that the trial court's offer constituted an illegal condition and that he is entitled to be resentenced. Specifically, defendant contends that the trial court imposed additional punishment based upon defendant's refusal to cooperate. He points out that in order to accept the judge's offer, he would have to effectively admit that his alibi testimony, as well as that of his stepfather and mother, was perjured.

■ A sentencing judge may take into account as a mitigating factor a defendant's voluntary cooperation with authorities. *United States v. Bradford*, 645 F.2d 115 (2nd Cir.1981). However, it is also well-settled that a sentence may not be increased based upon a defendant's failure to cooperate. *Id.; see also DiGiovanni v. United States*, 596 F.2d 74 (2nd Cir.1979) (improper to administer additional punishment to defendant who exercises his right to remain silent). There is a distinction between vindictiveness by enhancing a penalty, on the one hand, and a refusal to grant leniency, on the other. *Damiano v. Gaughan*, 770 F.2d 1 (1st Cir.1985); *Mallette v. Scully*, 752 F.2d 26 (2nd Cir.1984). We recognize the inherent difficulty trial

courts have in making such a distinction. Nonetheless, under the facts of this case, we are convinced that the trial court was offering leniency to the defendant.

The trial court imposed the basic sentence for each offense, without enhancement pursuant to NMSA 1978, Section 31–18–15.1 (Repl.Pamp.1987). The court cited the premeditated nature of the offenses in imposing sentence. In offering to cut his sentence by one-half, Judge Fort noted defendant's age. At no time during the sentencing hearing did the trial court tell defendant that he was imposing a more serious sentence because of his failure to identify the third accomplice. Our review of the sentencing hearing does not indicate that the state made any issue of defendant's cooperation. In *DiGiovanni*, cited by defendant, the trial judge specifically stated that he was imposing a more serious sentence because of the defendant's reluctance in assisting the government. *See also United States v. Stratton*, 820 F.2d 562 (2nd Cir.1987). Contrary to defendant's assertion, we are convinced that the trial court was simply extending an offer of leniency to the defendant. This was permissible. *Damiano v. Gaughan*.

Defendant also argues that the sentence is not sufficiently definite. He maintains the Corrections Department has no way of knowing whether he has been sentenced to 34 and one-half or 17 and one-quarter years. We disagree. Since defendant did not come forward within thirty days, the sentence of 34 and one-half years remained in effect. Defendant also argues that the sentence may constitute a danger to him since inmates who come to possess knowledge of the condition contained in the sentence might regard him as a "snitch." We find defendant's argument to be speculative. If defendant chose not to reveal his accomplice because he feared retaliation, he should have brought this fact to the attention of the trial court. *See United States v. Bradford*. Finally, defendant argues that the trial judge could not have made good on his offer since Section 31–

18–15.1 only allows the court to alter the basic sentence by one-third. Nevertheless, Judge Fort could have effectively cut the sentence in half through a combination of reduction and suspension. *See* § 31–18–15.1; NMSA 1978, § 31–20–3 (Repl.Pamp.1987).

Defendant's judgment and sentence are affirmed.

IT IS SO ORDERED.

DONNELLY, J., concurs.

APODACA, J., dissents.

APODACA, Judge (dissenting).

I respectfully dissent. The majority has correctly stated the standard of review in this appeal: Did the trial court abuse its discretion in determining there was manifest necessity in declaring a mistrial? On review, the propriety of a trial court's determination that manifest necessity exists to justify a mistrial declaration is measured by the specific facts of each case. *United States v. Sisk*, 629 F.2d 1174 (6th Cir.1980), *cert. denied*, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981). Applying the same constitutionally-mandated principles the majority has applied, I have concluded that under the particular facts of this appeal, the record clearly shows the trial court abused its discretion.

The majority concedes the state "must shoulder a heavy burden to justify the mistrial if the double jeopardy bar is to be avoided[,]" citing *Arizona v. Washington*, 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978). Absent in the majority's application of this constitutional principle, however, is the rigid standard by which we measure whether the state has met its burden. This standard was aptly stated in *Arizona v. Washington:*

The words "manifest necessity" appropriately characterize the magnitude of the prosecutor's burden * * *. Indeed, it is manifest that the key word "necessity" cannot be interpreted literally; instead, contrary to the teaching of Web-

ster, we assume that there are degrees of necessity and we require a "high degree" before concluding that a mistrial is appropriate.

*Id.* at 505–06, 98 S.Ct. at 830–31.

The majority, citing *Arizona* and *State v. Messier*, 101 N.M. 582, 686 P.2d 272 (Ct. App.1984), additionally concedes that, although explicit findings on the presence of manifest necessity are not dispositive of the issue before this court, the record must nonetheless provide "sufficient justification for the granting of the mistrial." *Arizona v. Washington* (entry in record of findings and explanation of reasons supporting trial court's declaration of mistrial, although facilitating review by appellate court, is not essential if the basis for mistrial declaration is adequately disclosed by record, including extensive argument of counsel before judge's ruling). *State v. Messier* (explicit findings of manifest necessity, although strongly recommended, not determinative, if record provides sufficient justification for mistrial declaration, including the trial court's consideration of other reasonable alternatives). *State v. Saavedra*, 108 N.M. 38, 766 P.2d 298 (1988) (trial judge's exercise of discretion should not be overruled absent clear indication he failed to engage in scrupulous exercise of judicial discretion, including due consideration of possible alternatives). *Saavedra* is our supreme court's most recent pronouncement on the issue before us.

*Arizona, Messier* and *Saavedra* all have a significant, common thread: the record in each case clearly indicated (1) the basis for the mistrial or (2) that the trial court considered other viable alternatives. These requirements, then, were essentially satisfied in those three cases. Without detailing the precise steps taken by the respective trial courts in those cases, I need only state they were substantial. What the trial courts did there, when compared with what the trial court did *not* do here, distinguishes this case materially. The record in this appeal is sorely lacking of any hint whatsoever that the trial court ever considered other alternatives.

In this regard, the majority recognizes that the trial court's "vitriolic outburst in his sua sponte declaration of a mistrial was inappropriate" and not to be condoned. Notwithstanding this recognition, the majority nevertheless gives undue weight to the in-chambers proceeding at which the trial court heard the state's motion in limine seeking to exclude opinion testimony of two police officers. I submit that in so doing, as well as in concluding that Officer Garcia's uninvited, unsolicited comment seriously prejudiced the state's case, the majority is performing judicial "cosmetic surgery" on the trial court's conduct. The record reflects a total absence of reflection on the part of the trial court in consideration of other alternatives to a mistrial. Instead, its ruling at the in-limine hearing, although not approaching the ill-advised behavior that the majority itself categorizes as "vitriolic," was spontaneous, if not regrettably impulsive, and did not represent the thought and consideration employed by the respective trial courts in *Arizona, Messier* and *Saavedra.*

There is one other, important element in this appeal that necessitates reversal. The reasoning of the majority, to a great extent, rests on what it contends was defense counsel's "misconduct" in eliciting Officer Garcia's opinion testimony concerning the victim's credibility or veracity. *Porter v. Ferguson*, 324 S.E.2d 397 (W.Va.1984), relied on by the majority in this connection, is factually distinguishable. In upholding the trial court's sua sponte mistrial declaration in *Porter*, the reviewing court emphasized defense counsel's clearly improper conduct in intentionally violating the trial court's in-limine order. The record in this appeal, on the other hand, is not only repleat of any affirmative showing of such misconduct, but instead indicates the contrary. Such misconduct, when present, has consistently been a significant underlying factor in reviewing court's upholding of a trial court's mistrial declaration, as was the case in *Porter.*

In reviewing the audio tapes of the in-limine hearing and that segment of the trial

involving Officer Garcia's unsolicited remark and the exchange that transpired between counsel and the trial court, I deduced no showing of misconduct, only the trial court's notion that there had been. The trial court's perception was tainted, I believe, by what it interpreted as a direct, personal attack on its prior ruling. It is the epitome of irony that the trial court's conduct, in the presence of the jury, itself formed the basis for a mistrial, had defendant chosen to request one. In this connection, I fail to see the significance the majority attributes to the fact that defense counsel requested a mistrial on three previous occasions. That fact, to my knowledge, has never been relevant in resolving the issue before us.

In performing the cosmetic surgery I noted earlier, the majority has now joined the trial court's company in concluding that defense counsel prodded for the allegedly inadmissable and damaging testimony. I disagree with this interpretation of what occurred in the trial proceeding. Not only was the opinion testimony nonresponsive to defense counsel's question, but defense counsel, after the trial court's mistrial declaration, painstakingly explained his motives and intentions on the record. What follows is my understanding of this explanation.

The victim, Tammy Lewis, had previously testified that the state police (which included Officer Garcia) had attempted to dissuade her from filing a complaint. She also stated the police had maintained they could not pursue the matter because the case was not within their jurisdiction. In an attempt to discredit the victim, defense counsel sought to elicit testimony from Officer Garcia to the effect that neither he nor anyone else ever attempted to discourage the victim from "filing a complaint." The lead-up questions to the ultimate question that unfortunately led Officer Garcia to offer the allegedly inadmissable testimony reasonably indicate that was defense counsel's intent.

Defense counsel also reminded the trial court that its ruling on the motion in limine pertained only to another officer, not Officer Garcia, and that defense counsel had stated at that hearing he never intended to procure the opinion testimony from Officer Garcia. The basis for this decision was that, to counsel's knowledge, Officer Garcia had never held any opinion of the victim's veracity. Counsel explained he thought of warning the officer not to give any kind of opinion testimony, but that when the officer had entered the courtroom, counsel did not want to admonish him, lest the jury conclude he was inappropriately "coaching" him.

Counsel informed the trial court that when he realized Officer Garcia's answer was nonresponsive to the specific question asked, he did not stop him because he did not want the jurors to think he was trying to keep something from them. He explained further that when Officer Garcia's answers previously had been nonresponsive to the state's questions on direct examination, he (defense counsel) decided not to object, for fear the jury would believe he did not want damaging testimony to be introduced. Thus, in my judgment, there is absolutely nothing in the record indicating defense counsel was guilty of misconduct, but only the trial court's personal opinion that counsel purposely and intentionally, in violation of the in-limine order, went on a fishing expedition for the damaging testimony.

I conclude there was an absence in this appeal of manifest necessity and would therefore reverse defendant's convictions.