# COURT OF APPEALS
## DECISION
## DATED AND FILED

## December 4, 2019

**Sheila T. Reiff**
**Clerk of Court of Appeals**

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP68**

Cir. Ct. Nos. **2017TR86**
**2017TR87**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**
**DISTRICT III**

---

**LANGLADE COUNTY,**

  **PLAINTIFF-APPELLANT,**

 **V.**

**TRAVIS LEE LETTAU,**

  **DEFENDANT-RESPONDENT.**

---

APPEAL from a judgment of the circuit court for Langlade County: JOHN B. RHODE, Judge. *Affirmed*.

¶1    SEIDL, J.[1] Langlade County appeals a judgment dismissing charges against Travis Lettau of operating a motor vehicle while intoxicated

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

(OWI) and operating a motor vehicle with a prohibited alcohol concentration (PAC), both as first offenses. The case was tried to the circuit court without a jury, and the court found Lettau not guilty of both charges. The County argues that the court erred by failing to apply the evidentiary presumptions afforded to Lettau's breath test result set forth in WIS. STAT. § 885.235. It further asserts that had the court properly applied § 885.235, the County met its burden of proof on both citations. We affirm.

## BACKGROUND

¶2 The facts of this case are largely taken from the circuit court's findings of fact, none of which the State contends are clearly erroneous. On January 21, 2017, at 2:55 a.m., Langlade County sheriff's deputy Jake DeFiore stopped Lettau for driving ten miles per hour over the speed limit.[2] DeFiore observed no improper driving by Lettau other than his vehicle's speed. Upon making contact with Lettau, DeFiore noticed Lettau's eyes appeared "glossy" and his speech "was slightly slower than what … DeFiore considered normal, but … not slurred." Lettau admitted that he had consumed "some alcohol" prior to driving.

¶3 Lettau agreed to perform field sobriety tests, which were recorded on video. DeFiore observed all six clues of impairment on the horizontal gaze nystagmus test. However, he only observed three clues of impairment on the

_____

[2] The circuit court found that the traffic stop occurred at 2:55 a.m. DeFiore testified that he first "encountered" Lettau at 2:35 a.m. and that the "actual time of the violation" as recorded on Lettau's citation was 2:55 a.m. Lettau's counsel initially recognized the discrepancy when the court gave its oral ruling, but then later concluded that she was mistaken and accepted the court's 2:55 a.m. finding. This twenty-minute discrepancy regarding the time of the stop is immaterial to our decision.

walk-and-turn test and one impairment clue on the one-leg-stand test. Lettau submitted to a preliminary breath test and was subsequently arrested.

¶4 After his arrest, Lettau agreed to take a second breath test at the county jail. At 3:47 a.m., within approximately one hour after he had been driving, the result of the Intoximeter breath test was .09 g/210L of breath.[3] Additionally, Lettau answered questions posed by law enforcement officers on an alcohol influence report in which he admitted to consuming alcoholic beverages at a tavern from approximately 10:00 p.m. until about 2:00 a.m. He was not asked, and did not specify, however, exactly how much he had to drink or when he drank it. Lettau was subsequently cited for OWI and PAC.

¶5 Lettau contested his citations at a bench trial. The County introduced the .09 breath alcohol concentration (BAC) test result, which the circuit court admitted without objection. While DeFiore testified regarding Lettau's field sobriety tests, the County did not introduce into evidence the video of those tests because it had failed to preserve the video.

¶6 At trial, Ronald Henson testified as an expert witness for Lettau. Henson has a doctoral degree in applied management and decision sciences, and he is a former police officer who now works as an independent consultant in drug and alcohol related matters. Henson opined that, due to the .09 test result and the test's timing approximately one hour after Lettau had been driving, Henson could not conclude with a reasonable degree of scientific certainty that Lettau's BAC

---

[3] The Wisconsin Statutes define "alcohol concentration" as: (1) "The number of grams of alcohol per 100 milliliters of a person's blood"; and (2) "The number of grams of alcohol per 210 liters of a person's breath." *See* WIS. STAT. §§ 340.01(1v); 885.235(1)(a).

was .08 or greater while he was driving. As to that testimony, the circuit court stated in its findings of fact:

> In other words, the Court interprets that testimony to be that [Lettau] could have been either higher or lower at the time of actual driving. The court believes this [is] common sense. It is common knowledge that the human body first absorbs and then digests alcohol after it is consumed. Therefore, after consumption alcohol concentration first goes up, eventually peaks, and then goes down until it is completely digested and disappears. There is insufficient evidence in the record to know if Mr. Lettau's BAC was higher or lower than .09 at the time he was driving.

¶7 Henson also testified that the Intoximeter device used in this case did not measure breath temperature, but if it did, its test results would have been more accurate. This is so because an individual's breath temperature affects a measuring device's breath test result, especially in a case like this one where Lettau's .09 breath test result was so close to the .08 benchmark. Henson explained that Wisconsin's Intoximeter devices are not approved for measuring breath temperature, and instead, they simulate an average breath temperature. Henson testified that an individual's breath temperature can vary as much as three degrees from the simulated average. Henson further testified that breath temperature impacts a breath test result by 8.6% per one degree. Thus, in this case where Lettau's breath test result was just .01 over the limit, Henson opined that Lettau's BAC could have actually been lower than .08 had the Intoximeter measured Lettau's actual breath temperature at the time his sample was analyzed.

¶8 The County called its own expert witness, Department of Transportation breath alcohol toxicologist Ashley Kickbusch, to rebut Henson's

testimony.[4] Kickbusch testified that Henson's opinions on the impact of breath or body temperature were overstated. Kickbusch opined that the actual impact of breath or body temperatures on BAC readings is minimal or nonexistent. Additionally, Kickbusch, as well as Theodore Skarlupka, a corrections officer at the Langlade County Jail, testified that the Intoximeter device was working properly and gave an accurate reading of Lettau's BAC.

¶9 Lettau did not testify. Following the bench trial's conclusion, the circuit court set a later date to give its oral decision.

¶10 The circuit court found Lettau not guilty of both the OWI and PAC citations. In arriving at its conclusion, the court relied heavily upon Wis JI—CRIMINAL 2668 (2014). That instruction provides that in order to obtain a guilty verdict on the OWI citation, the County had the burden to prove by clear, satisfactory, and convincing evidence that Lettau operated a motor vehicle and was under the influence of an intoxicant at the time he was driving. *See id.* Reading from the jury instruction, the court explained:

> "Under the influence of an intoxicant" means that the defendant's ability to operate a vehicle was impaired because of the consumption of an alcoholic beverage.
>
> Not every person who has consumed alcoholic beverages is "under the influence." What must be established is that the person has consumed a sufficient amount of alcohol to cause the person to be less able to exercise the clear judgment and steady hand necessary to handle and control a motor vehicle.

---

[4] Due to time constraints at the bench trial, the parties stipulated to Kickbusch providing her testimony via affidavit.

¶11 The circuit court determined that the County failed to meet its burden to establish by clear, satisfactory, and convincing evidence that Lettau had operated a motor vehicle while under the influence of an intoxicant. The court explained:

> Although Deputy DeFiore testified about some clues of impairment on the field sobriety tests that were administered, the Court feels that the county's failure to preserve the video evidence depicting the actual performance on the FSTs leaves doubt as to how impaired … Lettau was just after he was driving.
>
> The fact that the only reason Lettau was pulled over was speeding and there is no other alleged bad driving also leaves doubt about impairment. Speeding alone is certainly not indicative of impairment.

¶12 Regarding the County's burden on Lettau's PAC citation, the circuit court explained that "the defense does not have to prove that … Lettau's BAC was lower than .08. Rather, the county has the burden of proving by clear, satisfactory, and convincing evidence that Lettau's BAC was .08 or higher at the time he was driving." The court further noted that WIS JI—CRIMINAL 2668 (2014) instructs that if the court was

> satisfied that there was .08 grams or more of alcohol in 210 liters of [Lettau]'s breath at the time the test was taken, [it] may find from that fact alone that [Lettau] was under the influence of an intoxicant at the time of the alleged driving or that [Lettau] had a prohibitive alcohol concentration at the time of the alleged driving, or both, but [it was] not required to do so.

¶13 The circuit court then determined the County failed to meet its burden of proof on the PAC citation. The court explained:

> There is no doubt that the [I]ntox[i]meter gave a reading of .09. The defense does not assert that the machine was not functioning properly.

The .09 reading is certainly admissible, as the county argues, pursuant to section 885.235 of the Wisconsin Statutes. Although it is certainly admissible, it is not absolutely conclusive or determinative.

¶14 With regard to the expert witness testimony, the circuit court observed:

Dr. Henson, who this court does believe was a highly qualified and credible expert witness[,] testified that based on the facts and circumstances of this case it cannot be established to a reasonable degree of scientific certainty that … Lettau was .08 g/210L or greater at the time he was driving ….

No witness contradicted Dr. Henson's testimony on that specific point. Ms. Kickbusch only established that the .09 g/210L reading was an accurate reading at the time it was taken, about 52 minutes after … Lettau was driving.

¶15 The court circuit ultimately concluded:

[I]f … Lettau consumed a significant amount of alcohol within the … last half an hour or so before he was pulled over such as if he chugged a couple of beers or took a couple of shots just before he left, he may not have been .08 or above when he was driving.

The Court also believes that the county – and I don't fault the county for doing this …. One usually doesn't take testimony from witnesses when they don't know or have proper time to prepare for the answer. But this is a civil forfeiture case, not a criminal case, so the county or the defense could have called … Lettau to testify and either side could have asked him about how much he had to drink and when he drank it in relation to the driving.

Since neither side called … Lettau to testify and both sides could have done so, the Court does not wish to speculate about what his BAC was at the time of the actual driving.

For all of those reasons the Court does hereby find that the county has failed to meet its burden to establish by clear and satisfactory and convincing evidence that … Lettau either operated under the influence or with a prohibited breath alcohol concentration.

7

Therefore, the Court will find … Lettau not guilty of both citations and dismiss them at this time.

¶16    The County then sought clarification of parts of the circuit court's decision.    When the County asked the court if it considered "the credible testimony of Dr. Henson during which he agreed with [the County] that there was not ample evidence in this record to allow him to say that the BAC was below .09 at the time of the driving," the court replied:

> I recall that [Henson] said there was no way to scientifically conclude with any credibility that [Lettau] was .08 or higher at the time he was driving.
>
>  ….
>
> I read the transcript, but I don't recall the portion that you're speaking of.  If you believe that there is something in the transcript that would require or justify reconsideration of my decision you, I believe, are within your rights to ask for that ….  I was somewhat surprised that the curve defense was not the primary defense exhibit here, and maybe I missed the boat on something.  But when I read the testimony … combined with the Court's knowledge of – I think of what is common knowledge of any lawyer that's ever done any OWI work – on how alcohol is first absorbed and then digested, I believe there is a curve issue in this case.  That's the focus of my ruling for sure that I don't know where he was on that curve and that's why I don't think the burden of proof is met.

The County asked the court to "put additional facts on the record with regard to what [it] just observed that [it] believes there's a curve."  The court replied:

> I know that there is a time period when alcohol is ingested in the human body where it is first absorbed and then digested.  The alcohol level in the body first increases and then levels off and then decreases until it is gone.  I believe that absolutely to be a scientific fact.

The County further asked if the court's ruling "is based on [its] belief that [it] know[s] what this curve looked like in this case," to which the court replied, "I do not. I do not know where we were on the curve."

¶17 When the County asked the circuit court if it was "finding other facts" that allowed it to rebut Lettau's breath test result, the court stated, "No, I followed the jury instruction. [The breath test result] is admissible and it may on its own be conclusive, but it is not required to be such." The court also clarified that it was "not making the specific finding" that the County acted in bad faith by failing to preserve the squad car video of Lettau's performance during the field sobriety tests. It explained, "I am concerned that the county had control of that video. It was requested from the county within a very reasonable period of time and it was not preserved. … [I]t was evidence that the county controlled and failed to preserve."

¶18 The County now appeals the circuit court's dismissal of both the OWI and PAC citations.

## DISCUSSION

¶19 The County raises two issues on appeal. First, it argues that the circuit court committed an error of law by not applying the evidentiary presumptions contained in WIS. STAT. § 885.235(1g) when it considered Lettau's breath test result. Second, the County requests us to reverse the court's not-guilty verdicts and direct the court to find Lettau guilty of both OWI and PAC. In essence, the County argues that if the court had properly applied the § 885.235 presumptions, the County would have necessarily met its burdens of proof on the OWI and PAC citations. We address each issue in turn.

9

*I. The Circuit Court's Application of WIS. STAT. § 885.235(1g) to Lettau's Breath Test Result*

¶20     The County argues that the circuit court erred by failing to apply the evidentiary presumptions afforded to Lettau's breath test result under WIS. STAT. § 885.235.  Specifically, the County argues that the court erred by failing to find Lettau's .09 breath test result was presumptively accurate and in disregarding that result as prima facie evidence that Lettau was both under the influence of an intoxicant and had been driving with a prohibited alcohol concentration.   The interpretation of a statute and its application to the facts of this case are questions of law that this court reviews independently of the circuit court's determinations. *See **Yacht Club at Sister Bay Condo. Ass'n v. Village of Sister Bay***, 2019 WI 4, ¶¶17-18, 385 Wis. 2d 158, 922 N.W.2d 95.

¶21     In relevant part, WIS. STAT. § 885.235(1g) provides:

> In any action or proceeding in which it is material to prove that a person was under the influence of an intoxicant or had a prohibited alcohol concentration … evidence of the amount of alcohol in the person's blood at the time in question, as shown by … evidence of the amount of alcohol in the person's breath … is admissible on the issue of whether he or she was under the influence of an intoxicant or had a prohibited alcohol concentration … if the sample was taken within 3 hours after the event to be proved.  The chemical analysis shall be given effect as follows without requiring any expert testimony as to its effect:
>
>     ….
>
> (c) The fact that the analysis shows that the person had an alcohol concentration of 0.08 or more is prima facie evidence that he or she was under the influence of an intoxicant and is prima facie evidence that he or she had an alcohol concentration of 0.08 or more.

These presumptions, however, are rebuttable:

> The prima facie presumption of accuracy accorded recognized tests authorized by statute is a permissive inference or *rebuttable presumption*. The accuracy of the … test result is presumed, but *the defendant may come forward with some evidence in rebuttal in an effort to show that the result is in fact not accurate. The trier of fact is allowed, not required, to find the result of the test accurate*, and the presumption places no burden of any kind on the defendant. The result of a chemical test, although admissible, is open to rebuttal by the defendant, as a matter of defense, to adduce countervailing evidence of the unreliability or inaccuracy of the result. It is at this stage, after admission, that the defendant may attack the weight and credibility to be given the test.

*State v. Disch*, 119 Wis. 2d 461, 477, 351 N.W.2d 492 (1984) (emphasis added).

¶22 Contrary to the County's argument, the circuit court's oral ruling clearly indicates that it properly applied the evidentiary presumptions contained in WIS. STAT. § 885.235. The court explained:

> There is no doubt that the [I]ntox[i]meter gave a reading of .09. The defense does not assert that the machine was not functioning properly.
>
> The .09 reading is certainly admissible, as the county argues, pursuant to section 885.235 of the Wisconsin Statutes. Although it is certainly admissible, it is not absolutely conclusive or determinative.

¶23 WISCONSIN JI—CRIMINAL 2668 (2014), cited specifically by the circuit court in its oral ruling, further supports the court's application of WIS. STAT. § 885.235. The jury instruction provides:

> If you are satisfied that there was … .08 grams or more of alcohol in 210 liters of the defendant's breath[] at the time the test was taken, you *may* find from that fact alone that the defendant was under the influence of an intoxicant at the time of the alleged (driving) (operating) or that the defendant had a prohibited alcohol concentration at the time of the alleged (driving) (operating), or both, *but you*

> *are not required to do so*. You the jury are here to decide
> this question *on the basis of all the evidence in this case* ….

(Emphasis added.) The court was correct that Lettau's .09 breath test result, while "certainly admissible … is not absolutely conclusive or determinative." As the jury instruction provides, the court could, but was not required to, find Lettau guilty of OWI and PAC based upon the .09 breath test result alone. The court therefore did not err because the record demonstrates that the court properly applied the evidentiary presumptions contained in § 885.235 to the facts of record.

## II. The Circuit Court's Determination that Lettau was Not Guilty of OWI and PAC

¶24 The County asserts that if the circuit court had properly applied the evidentiary presumptions contained in WIS. STAT. § 885.235, the court should have—and would have—found Lettau guilty of OWI and PAC. In the County's view, "the court made no factual findings whatsoever which could lawfully justify overcoming the presumption of reliability afforded to the Intoximeter per statute."

¶25 Our standard of review plays a critical role in assessing the County's arguments. The circuit court adjudicated Lettau not guilty of OWI and PAC. When reviewing a judgment, the issue for this court is not whether we would have rendered the same verdicts, but whether there is any credible evidence in the record and reasonable inferences from that evidence to sustain the verdicts. *See Hamed v. County of Milwaukee*, 108 Wis. 2d 257, 272, 321 N.W.2d 199 (1982). Thus, properly framed, the County's second issue on appeal is whether there is credible evidence in the record and reasonable inferences from that evidence for this court to sustain the judgment.

¶26    We view the facts in the light most favorable to supporting the verdicts.  *Id.*  Following a bench trial, we will not set aside the circuit court's factual findings unless they are clearly erroneous.  WIS. STAT. § 805.17(2).  A finding of fact is clearly erroneous when it is against the great weight and clear preponderance of the evidence.  *Phelps v. Physicians Ins. Co.*, 2009 WI 74, ¶39, 319 Wis. 2d 1, 768 N.W.2d 615.  We search the record for evidence that supports the circuit court's findings, rather than look for evidence to support findings the court could have, but did not, make.  *Dickman v. Vollmer*, 2007 WI App 141, ¶14, 303 Wis. 2d 241, 736 N.W.2d 202.  Moreover, because it is the circuit court's responsibility to resolve conflicts in witness testimony, we will uphold its determinations as to witness credibility unless they are inherently or patently incredible, and we will not second-guess the court's reasonable factual inferences.  *Id.*  Patently incredible evidence is that type of evidence which conflicts with the laws of nature or fully established or conceded facts.  *Day v. State*, 92 Wis. 2d 392, 400, 284 N.W.2d 666 (1979).

¶27    We determine that the credible evidence and the reasonable inferences the circuit court could draw from that evidence support the court's conclusion that  the County failed to prove that Lettau was guilty of OWI and PAC.[5]  Both citations required that the County prove Lettau was operating a motor vehicle.  There was no dispute on that question.  As to the OWI citation, the County had to prove Lettau was "under the influence of an intoxicant"—meaning

---

[5] The County's arguments generally ignore that the OWI and PAC citations had different elements that the County needed to prove at trial.  The County does not appear to argue that we could affirm the circuit court's decision on one of the citations, but reverse its decision on the other.  To the extent the County does so argue, that argument is insufficiently developed and therefore forfeited.  *See M.C.I., Inc. v. Elbin*, 146 Wis. 2d. 239, 244-45, 430 N.W.2d 366 (Ct. App. 1988).

that he had consumed a "sufficient amount of alcohol" that caused him to be "less able to exercise the clear judgment and steady hand necessary to handle and control a motor vehicle." *See* WIS JI—CRIMINAL 2668 (2014). On the PAC citation, the County had to prove that Lettau had a prohibited alcohol concentration—i.e., .08 grams or more of alcohol in 210 liters of Lettau's breath—at the time he was driving. *See id.* Further, evidence of the latter could also be considered in determining whether Lettau was guilty of the OWI citation.

¶28 Contrary to the County's assertion on appeal, Lettau did produce credible evidence upon which the circuit court could rely to conclude that the County failed to meet its burden of proof on both citations. DeFiore "observed no other bad driving by Lettau" other than him driving ten miles per hour over the speed limit. The court found that this alone was not indicative of impairment. Additionally, although Lettau's eyes "appeared glossy" and his speech was "slightly slower" than normal, the court was entitled to weigh that evidence against the totality of the other evidence, including the fact that Lettau's speech was not slurred and the absence of erratic driving behavior. *See Dickman*, 303 Wis. 2d 241, ¶14. Lettau admitted to drinking an unknown amount of alcoholic beverages from 10:00 p.m. until 2:00 a.m., but "[n]ot every person who has consumed alcoholic beverages is 'under the influence' as that term is used" in this context. *See* WIS JI—CRIMINAL 2668 (2014).

¶29 Additionally, Lettau introduced testimony from Henson, who the circuit court found was a "highly qualified and credible expert witness." Henson testified that he could not conclude with scientific certainty that Lettau's BAC was .08 or greater at the time he was driving. The court interpreted Henson's testimony to mean that Lettau's BAC "could have been either higher or lower at the time of actual driving."

¶30    Henson's conclusion rested partially on his assertion that an individual's breath temperature affects his or her breath test result, especially in this case where Lettau's .09 breath test result was so close to the .08 benchmark. The Intoximeter in this case was not approved for measuring breath temperature, but rather it only simulated an average breath temperature. Henson testified that an individual's breath temperature can vary as much as three degrees from that average breath temperature, and that breath temperature can affect a breath test result by 8.6% per degree. Thus, in this case where Lettau's breath test result was just .01 over the .08 legal limit, Henson opined that Lettau's BAC could have been lower than .08 had the Intoximeter measured Lettau's actual breath temperature. The circuit court could reasonably conclude this evidence rebutted the presumption under WIS. STAT. § 885.235.

¶31    As the foregoing illustrates, there was credible evidence in the record from which the circuit court could reasonably conclude that the County failed to meet its burden of proof on both citations. This is so in spite of the rebuttable presumption given to Lettau's .09 breath test result, as discussed above. Accordingly, the court did not err in concluding that the County failed to prove by clear, convincing, and satisfactory evidence that Lettau was guilty of OWI or PAC.

¶32    The County's arguments lack merit because they necessarily require us to reweigh the evidence produced at trial. We recognize that the record contains evidence that supports the County's case, but the circuit court acknowledged and accounted for that evidence when handing down its verdicts. We will not upset a court's credibility determination or its reasonable factual inferences when there are apparent conflicts in witness testimony. *See Dickman*, 303 Wis. 2d 241, ¶14. Moreover, it is not for this court, but rather for the circuit

court sitting as the trier of fact, to weigh the evidence presented at trial. *See id.*; *see also* WIS. STAT. § 805.17(2).

¶33    The County's arguments also fail to acknowledge that a breath test result of .08 or greater is not determinative of Lettau's guilt.  As we have explained, the circuit court is not required to find Lettau guilty of OWI or PAC even if his breath test result is admissible and presumptively reliable.  *See* WIS. STAT. § 885.235(1g), (1g)(c); WIS JI—CRIMINAL 2668 (2014).

¶34    The County argues that if we affirm the circuit court's verdicts, our decision "would have state-wide impact and would seriously undermine the intent of the presumption of reliability."  The County's concern is overstated.  We do not hold that Intoximeter devices used in Wisconsin are inaccurate because they do not measure breath temperature.  Rather, we simply acknowledge that in certain cases such as this—where a defendant's breath test result is only .01 greater than the .08 benchmark—it is possible for the defendant to present sufficient evidence for a finder of fact to determine that the defendant has rebutted both the presumption of reliability afforded to a breath test result admitted under WIS. STAT. § 885.235(1g) and the prosecution's reliance on that presumption as meeting its burdens of proof.  This is not a novel interpretation of § 885.235(1g)— this is settled law.  *See Disch*, 119 Wis. 2d at 477.  Moreover, WIS JI—CRIMINAL 2668 (2014) clearly explains this concept to the trier of fact.

¶35    Further, we disagree with the County that the circuit court improperly "brought its own legal theories and its own facts to this case."  The County cherry-picks the court's statements, such as when it stated, "I know there is a curve," to argue that the court relied upon a BAC curve defense in making its decision without proper expert testimony on that matter.

¶36     When assessing the circuit court's oral ruling as a whole, we conclude that the court did not rely upon a BAC curve defense.  We acknowledge the court explained that it believed how a body absorbs and digests alcohol is "common sense" and a "scientific fact."  Nevertheless, the court also stated that it did not know where Lettau was on the BAC curve based upon the evidence the parties presented; rather, the court clearly found it was possible, based upon the properly admitted testimony, that Lettau was below the legal threshold for prosecution as to PAC.  Additionally, we note that the court did hear some testimony from Henson broadly explaining the BAC curve and how a body's absorption of alcohol is relevant in a case—such as this one—when a person's breath test result is only .01 greater than the .08 benchmark.  In all, the court did not bring its own legal theories or facts into the case.

        *By the Court.*—Judgment affirmed.

        This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.